No. 24-4819

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

Christine M. Searle
*Plaintiff-Appellant,*

v.

John M. Allen, et al.,
*Defendant-Appellees.*

_____

On Appeal from the United States District Court for the District of Arizona
Civil Case No. 24-CV-00025-JJT, The Honorable John J. Tuchi

_____

**Appellant's Opening Brief**

_____

William E. Trachman
Grady J. Block
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Tele: (303) 292-2021
wtrachman@mslegal.org

Veronica Lucero
Davillier Law Group LLC
4105 N. 20th St., Ste. 110
Phoenix, AZ 85016
Tele: (602) 730-2985 ext. 705
Fax: (602) 801-2539
vlucero@davillierlawgroup.com

*Attorneys for Appellant Christine M. Searle*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...................................................................................... i

TABLE OF AUTHORITIES ...............................................................................iii

Introduction ...................................................................................................... 1

Jurisdictional Statement ................................................................................... 2

Statutory and Regulatory Authorities ............................................................. 3

Issue(s) Presented............................................................................................. 3

Statement of the Case....................................................................................... 4

Statement of Facts............................................................................................. 5

Summary of the Argument............................................................................... 8

Standard of Review..........................................................................................10

Argument..........................................................................................................10

I.      The District Court Erred in Applying the *Rooker-Feldman* Doctrine to

Dismiss Appellant's Claims. ..........................................................................10

      A.      The Rooker-Feldman doctrine is narrow in scope............................11

      B.      Rooker-Feldman Does Not Apply Here............................................13

            1. At a minimum, Ms. Searle's Claim for Just Compensation Is Not

Barred by the *Rooker-Feldman* doctrine............................................14

2.  The District Court Erred by Holding that a Deprivation of Property Necessarily Includes the Deprivation of Surplus Equity. .................20

3.  Ms. Searle's State Law Claim for Unjust Enrichment is Not Barred by the *Rooker-Feldman* Doctrine.......................................................24

4.  Ms. Searle's Claims that the Deprivation of her Surplus Equity is an Excessive Fine are not barred by the *Rooker-Feldman* doctrine. .27

5.  Even Ms. Searle's Claim That Her Home Was Taken For A Non-Public Use is Not Barred By the *Rooker-Feldman* Doctrine.............29

II.    Separately, *the Rooker-Feldman* Doctrine Does Not Bar Ms. Searle's Claims for Declaratory Relief. ...........................................................................39

III.    Defendant John Allen Should Not Have Been Dismissed Because He Did Not Respond to the Second Amended Complaint. .........................................43

Conclusion ...........................................................................................45

Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6.................47

Form 8. Certificate of Compliance for Briefs.........................................................48

Form 15. Certificate of Service for Electronic Filing.............................................50

Addendum...............................................................................................52

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Allison v. State Farm Mut. Auto. Ins. Co.*,
    266 Fed. Appx. 627 (9th Cir. 2008) ...................................................... 36

*Ass'n for Los Angeles Deputy Sheriffs v. Cnty. of Los Angeles*,
    648 F.3d 986 (9th Cir. 2011) ............................................................ 10

*Automatic Art, L.L.C. v. Maricopa County*,
    2010 WL 1515708 (D. Ariz. Mar. 17, 2010) ........................................ 36

*Bell v. City of Boise*,
    709 F.3d 890 (9th Cir. 2013) ............................................................ 33

*Beres v. United States*,
    92 Fed. Cl. 737 (Ct. Fed. Claims 2010) .............................................. 16

*Bianchi v. Rylaarsdam*,
    334 F.3d 895 (9th Cir. 2003) ........................................................ 19, 33

*Brown v. Duringer Law Group PLC*,
    86 F.4th 1251 (9th Cir. 2023) ................................................. 11, 13, 14

*Carmona v. Carmona*,
    603 F.3d 1041 (9th Cir. 2010) .......................................................... 37

*Cogan v. Trabucco*,
    2024 WL 3883685 (9th Cir. Aug. 21, 2024) ........................................ 39

*Coleman through Bunn v. District of Columbia*,
    70 F. Supp. 3d 58 (D.D.C. 2014) .................................................. 16, 17

*Cooper v. Ramos*,
    704 F.3d 772 (9th Cir. 2012) ............................................................ 18

*Crowley v. Bannister*,
    734 F.3d 967 (9th Cir. 2013) ............................................................. 10

*District of Columbia Court of Appeals v. Feldman*,
    460 U.S. 462 (1983) ..................................................................... 11, 31

*Doe & Associates Law Offices v. Napolitano*,
    252 F.3d 1026 (9th Cir. 2001) ........................................................... 33

*Dorce v. City of New York*,
    2 F.4th 82 (2d Cir. 2021) ........................................... 15, 16, 25, 26, 27

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
    544 U.S. 280 (2005) ......................................................... 11, 12, 27, 34

*Federal Bureau of Investigation v. Fikre*,
    601 U.S. 234 (2024) ........................................................................... 40

*Fikre v. Federal Bureau of Investigation*,
    904 F.3d 1033 (9th Cir. 2018) ........................................................... 40

*First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*,
    482 U.S. 304 (1987) ........................................................................... 41

*Freed v. Thomas*,
    976 F.3d 729 (6th Cir. 2020) ............................................................. 17

*GASH Assocs. v. Rosemont*,
    995 F.2d 726 (7th Cir. 1993) ............................................................. 34

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*,
    615 F.3d 159 (3d Cir. 2010) ......................................................... 37, 38

*Hall v. Meisner*,
    51 F.4th 185 (6th Cir. 2022) .............................................................. 17

*In re Philadelphia Entm't & Dev. Partners*,
    879 F.3d 492 (3rd Cir. 2018) ....................................................... 31, 35

iv

*Jama v. State Farm Mutual Automobile Insurance Company*,
2024 WL 3853695 (9th Cir. Aug. 19, 2024) ....................................................... 24

*Knick v. Twnship. of Scott, Pa.*,
588 U.S. 180 (2019) ................................................... 10, 25, 32, 42, 43

*Lance v. Dennis*,
546 U.S. 459 (2006) ........................................................................... 13

*Lee v. Walters*,
2002 WL 31440883 (D. Or. Jan. 30, 2002) ................................................. 36

*Maldonado v. Harris*,
370 F.3d 945 (9th Cir. 2004) ................................................................. 30, 37

*Manufactured Home Communities, Inc. v. City of San Jose*,
420 F.3d 1022 (9th Cir. 2005) ......................................................... 18, 19, 34

*McCormick v. Braverman*,
451 F.3d 382 (6th Cir. 2006) ................................................................... 32

*Merritts v. Richards*,
62 F.4th 764 (3rd Cir. 2023) ................................................................. 17, 18

*Mothershed v. Justices of Supreme Court*,
410 F.3d 602 (9th Cir. 2005) ................................................................... 30

*Nieveen v. TAX 106*,
317 Neb. 425 (Neb. 2024) ..................................................................... 8, 24

*Noel v. Hall*,
341 F.3d 1148 (9th Cir. 2003) ......................................................... 10, 12. 33

*Pacific Bell Telephone Co. v. linkLine Communications, Inc.*,
555 U.S. 438 (2009) ............................................................................. 44

*Pell v. Nuñez*,
99 F.4th 1128 (9th Cir. 2024) ............................................................. 32, 45

v

*Ray v. Frye*,
    119 P.2d 941 (Ariz. 1941) ...................................................................... 36

*Reed v. Goertz*,
    598 U.S. 230 (2023) ............................................................................ 39, 40

*Rooker v. Fidelity Trust Co.*,
    263 U.S. 413 (1923) .................................................................................. 11

*Rosier v. Strobel*,
    2014 WL 11515026 (D. Ariz. Dec. 23, 2014) ................................... 35, 36

*Searle v. Allen*,
    2024 WL 3427163 (D. Ariz. Jul. 16, 2024) ......................................... 1, 2

*Skinner v. Switzer*,
    562 U.S. 521 (2011). ........................................................................... 39, 45

*Sung Cho v. City of New York*,
    910 F.3d 639 (2d Cir. 2018) ............................................................... 14, 31

*Thana v. Board of License Commissioners for Charles County, Maryland*,
    827 F.3d 314 (4th Cir. 2020) ..............................................................11, 12

*Timbs v. Indiana*,
    586 U.S. 146 (2019) ................................................................................. 28

*Traylor v. Pacciuco, LLC*,
    2024 WL 839523 (D. Conn. Feb. 28, 2024) ......................................... 35

*Tyler v. Hennepin Cnty.*,
    505 F. Supp. 3d 879 (D. Minn. 2020) ................................................... 15

*Tyler v. Hennepin Cnty.*,
    26 F.4th 789 (8th Cir. 2022) ....................................................... 1, 20, 23

*Tyler v. Hennepin Cnty., Mn.*,
    598 U.S. 631 (2023) ........................ 1, 3, 4, 6, 14, 17, 21, 22, 23, 24, 34

*U.S. Bank Trust National Association v. Walworth County, Wi.*,
  2023 WL 5344345 (7th Cir. 2023) ........................................ 16

*United States v. Bajakajian*,
  524 U.S. 321 (1998) ................................................................ 28

*United States v. Lawton*,
  110 U.S. 146 (1884) ................................................................ 15

*United States v. Schwarzbaum*,
  — F.4th —, 2024 WL 3997326 (11th Cir. 2024) ................. 29

*Unknown Party v. Arizona Bd. of Regents*,
  2019 WL 7282027 (D. Ariz. Dec. 27, 2019) ......................... 35

*Verizon Maryland, Inc. v. Public Service Com'n of Maryland*,
  535 U.S. 635 (2002) ................................................................ 11

*Vuyanich v. Smithton Borough*,
  5 F.4th 379 (3rd Cir. 2021) .................................................... 32

*Wang Elec., Inc. v. Smoke Tree Resort, LLC*,
  283 P.3d 45 (Ariz. Ct. App. 2012) ......................................... 24

*Zeyen v. Bonneville Joint District, #93*,
  — F.4th —, 2024 WL 3909574 (9th Cir. Aug. 23, 2024) .............. 40, 41

**Statutes**

28 U.S.C. § 1291 ............................................................................ 2

28 U.S.C. § 1331 ....................................................................... 2, 11

28 U.S.C. § 1367 ............................................................................ 2

42 U.S.C. § 1983 ......................................................................... 2, 8

A.R.S. § 42-18204(B) ................................................................... 40

A.R.S. §§ 42-18101 ...................................................................... 22

Title 42, Chapter 18 of the Arizona Revised Statutes ............................................ 44

**Other Authorities**

Senate Bill 1431 ............................................................................... 4, 7, 40

Memorandum in Support of Motion to Dismiss filed by Hennepin County,
*Tyler v. Hennepin County, Mn.*, No. 0:20-cv-00889-PJS-BRT,
2020 WL 8182735 (D. Mn. Apr. 24, 2020) .................................................... 20, 21

Brief of Amici Curiae National Tax Lien Association, et al.,
*Tyler v. Hennepin County, Minnesota*, No. 22-166, 2023 WL 2816046 (Mar. 31,
2023) ................................................................................................. 7

## Introduction

In *Tyler v. Hennepin Cnty., Mn.*, 598 U.S. 631 (2023), the Supreme Court held that the government could not seize Geraldine Tyler's home to satisfy a tax debt, and then retain the delta between the debt and the value of the home. *See Tyler*, 598 U.S. at 639 ("The County had the power to sell Tyler's home to recover the unpaid property taxes. But it could not use the toehold of the tax debt to confiscate more property than was due. By doing so, it effected a classic taking in which the government directly appropriates private property for its own use.") (internal quotation marks omitted). The decision was unanimous.

Like Geraldine Tyler, Arizona homeowner Ms. Christine Searle also lost her house due to a tax lien. And just like *Tyler*, her home went through a state court foreclosure action. *See Tyler v. Hennepin Cnty., Mn.*, 26 F.4th 789, 793 (8th Cir. 2022) ("Tyler received notice of the foreclosure action and failed to respond. In April 2012, the county obtained a judgment against Tyler's condominium."). But unlike Geraldine Tyler, who obtained a unanimous decision from the Supreme Court, Ms. Searle's claims have been deemed barred by the *Rooker-Feldman* doctrine. *See Searle v. Allen*, No. CV-24-00025-PHX-JJT, 2024 WL 3427163, *3 (D. Ariz. Jul. 16, 2024) ("Under *Rooker–Feldman*, the Court may not 'undercut the state ruling' that Plaintiff's rights have been extinguished, nor may it consider Plaintiff's post-

judgment takings claims because they are 'inextricably intertwined' with that ruling.").

Respectfully, this Court should reverse the District Court, and allow Ms. Searle's claims to proceed, so that she can vindicate her constitutional and other rights, just like Ms. Tyler did.

## Jurisdictional Statement

The District Court had jurisdiction over Ms. Searle's federal claims under 28 U.S.C. § 1331, as they arise under the U.S. Constitution and 42 U.S.C. § 1983. It had jurisdiction over Ms. Searle's state claims under 28 U.S.C. § 1367, based on supplemental jurisdiction principles. The District Court entered a final judgment dismissing all claims on July 16, 2024. Ms. Searle timely filed a notice of appeal on August 2, 2024. This Court has jurisdiction under 28 U.S.C. § 1291.

Although the District Court held that it lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine, that holding was erroneous for the reasons explained below. *Rooker-Feldman* is a narrow doctrine that applies only to federal claims seeking direct review of state court judgments. Because Ms. Searle's claims challenge Appellees' independent conduct—not the state court foreclosure judgment itself—*Rooker-Feldman* does not deprive the District Court or this Court of jurisdiction. The District Court's *Rooker-Feldman* ruling is thus not an impediment to this Court's jurisdiction to hear Ms. Searle's appeal.

2

### Statutory and Regulatory Authorities

All relevant statutory and constitutional authorities are reproduced in the Addendum to this brief.

### Issue(s) Presented

Appellant asks this Court to review whether the District Court erred in dismissing Appellant's constitutional claims for (1) an unconstitutional taking; and (2) an Excessive Fine, based on the *Rooker-Feldman* doctrine, where those claims arose from Appellees' conduct, and where no claim asked the District Court to pass judgment on the reasoning of the earlier state foreclosure action. In the same vein, Appellant asks that the Court reverse the dismissal of Ms. Searle's other claims, such as her state law claim for unjust enrichment, since the District Court's analysis of the *Rooker-Feldman* led it to dismiss those claims as well.

Put simply, with respect to her just compensation claim, Appellant does not seek direct review of the state court foreclosure judgment itself, because she has no need to, under *Tyler*. Indeed, her claims rely on the correctness of that judgment. *See Tyler*, 598 U.S. at 647-48 ("A taxpayer who loses her $40,000 house to the State to fulfill a $15,000 tax debt has made a far greater contribution to the public fisc than she owed. The taxpayer must render unto Caesar what is Caesar's, but no more.") (emphasis added). And with respect to Appellant's other claims, this Court should

reject the application of the *Rooker-Feldman* doctrine, given that Ms. Searle can prevail without questioning the foreclosure court's judgment.

## Statement of the Case

Ms. Searle was delinquent in her property taxes in the amount of $1,607.68. 2-ER-112. On February 1, 2022, a Treasurer's Deed was issued by Appellee John Allen to Appellee Arapaho LLC (Arapaho). 2-ER-112. The quit claim deed, dated February 3, 2022, transferred the property to American Pride LLC (American Pride) for $10 shortly thereafter. 2-ER-241. (together, the private Appellees). In June 2023, the Supreme Court issued its decision in *Tyler v. Hennepin Cnty, Mn*. 598 U.S. 631 (2023). And as part of this suit involving Ms. Searle, the Arizona Attorney General acknowledged the applicability of *Tyler*, as well as the unconstitutionality of the scheme under which the private Appellees had previously taken ownership of Ms. Searle's home. 2-ER-246 ("And because the State cannot authorize others to do that which the State is not empowered to do, county treasurers cannot sell to private parties more of a property interest than the State itself could be assigned and retain."). State law was thereafter amended to reflect the understanding that *Tyler* affirmatively invalidated the prior Arizona tax lien scheme. 2-ER-064 (Notice of Supplemental Authority regarding SB 1431). However, the statute was not retroactive. *Id.*

4

Ms. Searle filed an amended complaint on April 24, 2024, to incorporate the Attorney General's admissions, and reference the new Arizona state law. The operative complaint alleged Takings claims, Excessive Fines claims, and a Gift Clause claim under the Arizona Constitution, as well as a common law claim for unjust enrichment. But the District Court dismissed the entire case after holding that the *Rooker-Feldman* doctrine barred Ms. Searle from bringing her federal claims in federal court. It determined that the only way that it could rule in favor of Ms. Searle on every claim but one was by serving as a reviewing court for the state court that entered the order on foreclosure. 1-ER-008 ("If Plaintiff's claims have merit—and this decision does not suggest that they do not—she may pursue them in state court."). It then dismissed the Gift Law claims as outside of its jurisdiction. Ms. Searle respectfully appeals the holding that the *Rooker-Feldman* doctrine bars her federal and state court claims from proceeding before the District Court below.

## Statement of Facts

Appellant Christine Searle is 71 years old. In 2021, Ms. Searle lost her home in Gilbert, Arizona through a tax lien foreclosure initiated by Appellee Arapaho LLC. 2-ER-112. After obtaining a default judgment, Appellee Arapaho took title to the property pursuant to a treasurer's deed issued by the Maricopa County Treasurer, Appellee John Allen. 2-ER-112. Unfortunately, this was a common occurrence in Arizona, resulting in numerous individuals having the equity in their homes taken

from them over miniscule delinquent tax debts. 2-ER-103 ("With shocking frequency across the counties of Arizona, homeowners and lenders are failing to redeem delinquent tax liens, and are thereby losing their pecuniary and fee simple interests.").

Ms. Searle later learned that the property had been transferred to Appellee American Pride Properties, and that the private Appellees had retained hundreds of thousands of dollars in surplus equity from the sale, far in excess of the $1,607.68 tax debt Ms. Searle had owed. 2-ER-111-112. In 2023, the U.S. Supreme Court unanimously held in *Tyler v. Hennepin County* that local governments violate the Takings Clause by confiscating and selling a taxpayer's property to satisfy a debt, and retaining the surplus proceeds. Two Justices—Justice Gorsuch and Justice Jackson—concurred, saying that the act of taking surplus equity also imposed an unconstitutional excessive fine. *Tyler,* 598 U.S. at 649-50 (Gorsuch, J., concurring, with Jackson, J.) ("Economic penalties imposed to deter willful noncompliance with the law are fines by any other name. And the Constitution has something to say about them: They cannot be excessive.").

In the wake of the Supreme Court's decision in *Tyler*, Arizona officials recognized the need to amend the state's tax lien foreclosure scheme to comply with the Court's holding. Defendant John Allen, in his capacity as Maricopa County Treasurer, testified before the Arizona State Senate Finance Committee in support of

Senate Bill 1431, which aimed to address the constitutional defects in Arizona's scheme. 2-ER-114. During his testimony, Allen acknowledged that under Arizona's existing scheme, there was no mechanism for property owners to obtain the excess proceeds from tax sales, and that the proposed legislation was necessary to "add[] that mechanism" and give owners the ability to claim the surplus equity in their properties. *Id.*

Allen's recognition of the constitutional problems with Arizona's scheme was hardly surprising, given his prior involvement in the *Tyler* case itself. The Arizona County Treasurers Association (ACTA), of which Allen is a member, filed an amicus brief with the Supreme Court in *Tyler*, arguing against the position ultimately adopted by the Court. 2-ER-122. (citing Brief of Amici Curiae National Tax Lien Association, et al., *Tyler v. Hennepin County, Minnesota*, No. 22-166, 2023 WL 2816046 (Mar. 31, 2023)). In its brief, the ACTA warned that a ruling in favor of the property owner would have "dramatic" effects and "reverberate throughout the country," referencing Arizona specifically *Id*. Despite these arguments, the U.S. Supreme Court held that the retention of surplus equity from tax sales constitutes an unconstitutional Taking—a holding that Defendant Allen, through his testimony in support of Senate Bill 1431, effectively conceded applied to Arizona's scheme. 2-ER-114-115.

Relying on *Tyler*, Ms. Searle filed this action alleging that Appellees' retention of the surplus equity violated the Takings Clause, the Excessive Fines Clause, and 42 U.S.C. § 1983. She brought claims against both the government entities (Appellees Allen and Maricopa County) who initiated the transfer of her property, and the private Appellees who now own it. *Cf. Nieveen v. TAX 106*, 317 Neb. 425, 434 (Neb. 2024) ("We find that Nieveen alleged a plausible takings claim against Vintage [Management LLC.]"). She sought a declaration that Arizona's tax lien foreclosure scheme is unconstitutional, an injunction preventing her impending eviction, damages, and other relief.

The District Court dismissed the action for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. This appeal followed.

## Summary of the Argument

The District Court erred in dismissing Ms. Searle's constitutional claims under the *Rooker-Feldman* doctrine. That doctrine is a narrow one that precludes federal district courts from reviewing state court judgments. But Ms. Searle's claims do not seek review of the foreclosure judgment itself. Rather, they arise primarily from Appellees' independent conduct in retaining the surplus equity from the sale of the property, which the Supreme Court in *Tyler* held is an unconstitutional Taking.

The District Court fundamentally mischaracterized Ms. Searle's claims by conflating the effect of the foreclosure judgment with Appellees' subsequent

8

retention of the surplus proceeds. Binding precedent from the Supreme Court and this Court makes clear that *Rooker-Feldman* does not bar independent claims arising from the independent conduct of defendants, even if that conduct is related to or ratified by a state court judgment.

The District Court's error is especially troubling because it essentially contradicts *Tyler*—that is, without citing any authority, the District Court held that Ms. Searle lacks any independent property interest in the surplus equity that she is entitled to under *Tyler*. 1-ER-006 ("After entering judgment, Plaintiff lost all 'right, title and interest' in the Property. This, of course, includes any right to surplus equity.") (cleaned up). More broadly, by dismissing the action on *Rooker-Feldman* grounds, the District Court failed to address the merits of Ms. Searle's well-pleaded constitutional claims. Those claims raise substantial questions about the validity of Arizona's tax lien foreclosure scheme in light of *Tyler*, and warrant a full airing in federal court.

Finally, the District Court erred in dismissing Defendant Allen from the action *sua sponte*, as Allen never filed a motion to dismiss. The claims against Allen should thus be permitted to proceed on remand.

This Court should reverse the judgment and remand for adjudication of Ms. Searle's claims on the merits. Ms. Searle is entitled to her day in federal court to prove her claims, most prominently that Appellees' retention of her surplus equity violates the

9

Constitution. *Cf. Knick v. Twnship. of Scott, Pa.*, 588 U.S. 180, 185 (2019) ("But the guarantee of a federal forum rings hollow for takings plaintiffs, who are forced to litigate their claims in state court."). The District Court's refusal to hear those claims based on a misapplication of *Rooker-Feldman* was reversible error.

### Standard of Review

This court reviews de novo a district court's dismissal for lack of subject matter jurisdiction under *Rooker-Feldman* doctrine. *See Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). On a motion to dismiss under Rule 12(b)(6), courts accept all factual allegations in the plaintiff's complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Ass'n for Los Angeles Deputy Sheriffs v. Cnty. of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011). Dismissal is proper only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle her to relief. *Id*. Finally, the Court reviews for abuse of discretion a district court's denial of leave to amend a complaint. *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013).

### Argument

### I. The District Court Erred in Applying the *Rooker-Feldman* Doctrine to Dismiss Appellant's Claims.

The District Court improperly dismissed Appellant Christine M. Searle's constitutional claims based on a misapplication of the *Rooker-Feldman* doctrine. This Court should reverse because Ms. Searle's claims do not seek direct review of

the state court judgment, but rather allege independent constitutional violations arising from the deprivation of her property rights by Appellees.

### A. *The Rooker-Feldman doctrine is narrow in scope.*

The *Rooker-Feldman* doctrine prevents federal district courts from exercising appellate jurisdiction over the reasoning of state court opinions. *See, e.g.*, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). "The *Rooker–Feldman* doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments…" *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 644 n.3 (2002).

As the Ninth Circuit held last year, "[t]he doctrine occupies narrow ground and applies only in limited circumstances." *Brown v. Duringer Law Group PLC*, 86 F.4th 1251, 1253 (9th Cir. 2023) (internal quotation marks omitted). Indeed, the Supreme Court has emphasized that the *Rooker-Feldman* doctrine is confined to "limited circumstances" where a party specifically seeks direct review of a state court judgment in federal court. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005); *Thana v. Board of License Commissioners for Charles County, Maryland*, 827 F.3d 314, 319 (4th Cir. 2020) ("The doctrine goes no further than necessary to effectuate Congress' allocation of subject matter jurisdiction

between the district courts and the Supreme Court, as the *Exxon* Court emphasized in noting that the doctrine should be applied no broader than the holdings in the two cases from which the doctrine takes its name.").

In *Exxon Mobil*, the Court clarified that *Rooker-Feldman* "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting <u>district court review and rejection</u> of those judgments." *Exxon*, 544 U.S. at 284 (emphasis added).

Importantly, the *Exxon Mobil* Court held that even if a federal plaintiff presents claims that deny a legal conclusion reached by the state court, *Rooker-Feldman* does not deprive the federal court of jurisdiction, as long as the plaintiff presents some independent claim. *Id*. at 293 (citing *Noel v. Hall*, 341 F.3d 1148, 1163-64 (9th Cir. 2003). Ms. Searle's claims here fit squarely within this category— she does not seek review and rejection of the state court judgment itself, but rather asserts independent federal constitutional claims based on the Appellees' deprivation of her property rights. That does not prevent Appellees from arguing preclusion on remand. But it does prevent them from asserting the *Rooker-Feldman* doctrine as a defense here. *Exxon Mobil*, 544 U.S. at 293 ("If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law

12

determines whether the defendant prevails under principles of preclusion.") (cleaned up).

### B. Rooker-Feldman Does Not Apply Here.

The District Court erred by concluding that Ms. Searle's claims generally amounted to a *de facto* appeal of the state court foreclosure judgment. To the contrary, Ms. Searle has consistently maintained that she is not challenging the foreclosure judgment—which predates *Tyler* by over a year—but rather the constitutionality of the Appellees' actions after that judgment was entered. The Complaint makes clear that Ms. Searle's claims arise from the "judgment and the resulting issuance of the treasurer's deed" that ultimately "deprived [her] of the value of all the equity she had built in her home." 2-ER-115 (emphasis added).)

By conflating the legal effect of the judgment with the defendants' subsequent unconstitutional conduct, the District Court erroneously stretched *Rooker-Feldman* beyond its limited scope. The Supreme Court has cautioned against such expansive applications of the doctrine, emphasizing that it "is not simply preclusion by another name." *Lance v. Dennis*, 546 U.S. 459, 466 (2006); *cf. Brown*, 86 F.4th at 1254 ("A fair reading of Tenants' complaint and the subsequent record shows that Tenants seek to remedy the harms caused by <u>Duringer's filing</u> of the October memorandum of costs, not the February memorandum, as the district court assumed.") (emphasis added).

The District Court's approach would effectively bar any federal constitutional challenge to the independent acts of defendants, so long as some state court were involved in part of the foreclosure process. That is not the law. *Id.* at 1254 ("There is no relevant state-court judgment purporting to adjudicate the validity of the costs in the October memorandum. Brown never filed a motion to tax costs, so the state court never used that vehicle to decide the accuracy of the costs."); *Sung Cho v. City of New York*, 910 F.3d 639, 645 (2d Cir. 2018) ("[W]e have concluded that *Rooker-Feldman* did not apply where a plaintiff filed a federal suit alleging that defendants' conduct during the course of a state foreclosure action violated, *inter alia*, the Fair Debt Collection Practices Act ('FDCPA').") The District Court's interpretation is thus untenable, and contrary to the limited nature of *Rooker-Feldman*, as articulated by the Supreme Court and the Ninth Circuit.

> ### 1. At a minimum, Ms. Searle's Claim for Just Compensation Is Not Barred by the *Rooker-Feldman* doctrine.

The District Court's error is most glaring in light of the Supreme Court's recent decision in *Tyler*, 598 U.S. 631 (2023). In *Tyler*, the Court held that a local government violates the Takings Clause by seizing and selling a taxpayer's home to satisfy a tax debt, after a foreclosure action, and then retaining the surplus proceeds in excess of the debt. *Id*. at 639. The Court emphasized that while a government may take property to collect delinquent taxes, it may not "confiscate more property than is due" without running afoul of the Takings Clause. *Id*. And lest there be any doubt,

14

Ms. Tyler's claim arose after a state court entered a foreclosure judgment against her. *See Tyler v. Hennepin Cnty.*, 505 F. Supp. 3d 879, 885 (D. Minn. 2020) ("Pursuant to this statutorily-prescribed process, the County <u>obtained a judgment</u> against Tyler's condo in April 2012 after she received notice of the foreclosure action and failed to file an answer.") (emphasis added).

Ms. Searle's claim for just compensation is essentially identical to the one in *Tyler*. She alleges that after a foreclosure judgment was entered and the treasurer's deed was issued, Appellees unconstitutionally retained hundreds of thousands of dollars in surplus equity from the sale of her home—the very conduct proscribed by *Tyler*. These allegations give rise to an <u>independent</u> constitutional claim that does not seek review of the foreclosure judgment itself. A plaintiff who owes a debt, and then forcibly loses property to pay that debt, has an independent property right in the surplus value—regardless of whether the plaintiff has an interest in the underlying physical property itself. *See United States v. Lawton*, 110 U.S. 146, 150 (1884) ("To <u>withhold the surplus</u> from the owner would be to violate the fifth amendment to the constitution, and deprive him of his property without due process of law or take his property for public use without just compensation.") (emphasis added); *Dorce v. City of New York*, 2 F.4th 82, 105 (2d Cir. 2021) ("Plaintiffs do not seek to void that state court foreclosure judgment; rather, they seek compensation only for the excess value of their property above the taxes and fees that they owed, not the return of their

property or the full value of their property."); *Beres v. United States*, 92 Fed. Cl. 737, 749 (Ct. Fed. Claims 2010) (an action for just compensation could proceed despite deriving from a state court quiet title action holding that the plaintiff lacked any interest in the property).[1]

The District Court's misapplication of *Rooker-Feldman* is further highlighted by the D.C. District Court's decision in *Coleman through Bunn v. District of Columbia*, 70 F. Supp. 3d 58 (D.D.C. 2014). There, the court held that *Rooker-Feldman* did not bar a plaintiff's claim for just compensation based on the alleged unconstitutional Taking of surplus equity in a tax sale. *Id*. at 74-75. The court emphasized that the plaintiff was challenging "the taking, not of a foreclosed property, but of the entirety of the equity in that property, without recourse for a

---

[1] Notably, in a pre-*Tyler* case, the Seventh Circuit ordered the parties to provide supplemental briefing on the topic of whether the *Rooker-Feldman* doctrine applied to a Takings claim involving a foreclosure judgment. *See U.S. Bank Trust National Association v. Walworth County, Wisconsin*, 22-1168 (7th Cir. Oct. 2, 2022) ("We order each party to file a supplemental brief limited to 5,000 words to address whether and how the *Rooker-Feldman* doctrine affects this appeal."). But after *Tyler* was decided, the Seventh Circuit remanded the case for *de novo* review before the Eastern District of Wisconsin. *See U.S. Bank Trust National Association v. Walworth County, Wisconsin*, 2023 WL 5344345 (7th Cir. 2023) ("In light of the Supreme Court's decision in *Tyler v. Hennepin County, Minnesota*, 143 S. Ct. 1369 (2023), we vacate the district court's judgment and remand for de novo reconsideration."). In other words, the Seventh Circuit impliedly <u>rejected</u> the conclusion that the *Rooker-Feldman* doctrine applies to Takings Claims that arise from foreclosure judgments; otherwise, it would have dismissed the case entirely for lack of jurisdiction, not remanded to the District Court for consideration in light of *Tyler*.

taxpayer to recover the amount of that equity less any taxes, penalties, costs, and interest owed." *Id*. at 74. That is precisely the situation alleged by Ms. Searle.

So by holding that *Rooker-Feldman* barred Ms. Searle's just compensation claim, the District Court denied Ms. Searle a forum to vindicate her very rights under *Tyler*. *See Tyler*, 598 U.S. at 644 (Ms. Tyler had a right to the surplus equity in her home even "once absolute title has transferred to the State"); *cf. Hall v. Meisner*, 51 F.4th 185, 188 (6th Cir. 2022) (holding that confiscation of surplus equity constitutes an unconstitutional taking, even though the process in Michigan "required the state circuit court to enter a <u>foreclosure judgment</u> that vested 'absolute title' to the property in the county (or the State, if the county chose not to foreclose).") (emphasis added); *Freed v. Thomas*, 976 F.3d 729, 737 (6th Cir. 2020) ("[T]akings suits in federal courts to recover excess equity as a result of state tax foreclosure sales do not violate the principle of judicial federalism.").

Indeed, in a Third Circuit opinion, the court there rejected the application of the *Rooker-Feldman* doctrine in the context of a suit for just compensation related to a judicial condemnation proceeding. *See Merritts v. Richards*, 62 F.4th 764, 775-76 (3rd Cir. 2023). The court permitted a plaintiff's Section 1983 suit to proceed, even though the claim "hinged" on the condemnation action, because the suit "depend[ed] on the *correctness* of the judgment in the condemnation action." *Id.* at 776 (original emphasis). Like *Merritts*, Ms. Searle would have no Takings claim if

she undermined the state foreclosure judgment here; she is entitled to just compensation precisely because that judgment will stay in place. *Id.* (a successful just compensation claim does not undermine a condemnation action because "the obligation to provide such compensation arises upon a taking.")

In other contexts, this Court's precedents likewise confirm that Ms. Searle's claim for just compensation is not barred by *Rooker-Feldman*. In *Cooper v. Ramos*, 704 F.3d 772 (9th Cir. 2012), for instance, this Court held that a plaintiff's due process challenge to the imposition of sex offender registration requirements was not barred by *Rooker-Feldman*, even though those requirements were imposed pursuant to a state court judgment. The Court reasoned that the plaintiff was not seeking review of the state court judgment itself, but rather challenging the constitutionality of the statutory regime under which that judgment was obtained. *Id*. at 779. The same is true here. Ms. Searle does not seek review of the foreclosure judgment, but rather challenges the constitutionality of the Arizona statutory scheme that permitted the defendants to deprive her property, most prominently by retaining the surplus equity from the sale of her home.

Similarly, in *Manufactured Home Communities, Inc. v. City of San Jose*, 420 F.3d 1022 (9th Cir. 2005), this Court held that a plaintiff's Takings claim based on a rent control ordinance was not barred by *Rooker-Feldman*, even though the ordinance had been upheld in a previous state court judgment. The Court explained

18

that the plaintiff was not seeking review of the state court's decision, but rather challenging "the fundamental legitimacy of the ordinance" on constitutional grounds. *Id.* at 1030. Likewise, Ms. Searle is not seeking review of the state court's foreclosure judgment, but rather challenging the fundamental legitimacy of Arizona's tax lien foreclosure scheme under the Takings Clause and other constitutional provisions.

The District Court's reliance on *Bianchi v. Rylaarsdam*, 334 F.3d 895 (9th Cir. 2003), was, respectfully, misplaced. In *Bianchi*, the plaintiff filed a federal action seeking to vacate a state court order recusing him from serving as an expert witness in various California cases. *Id.* at 898. This Court held that the action was barred by *Rooker-Feldman* because it sought direct review of the state court's recusal order. *Id.* at 900 ("Bianchi seeks an order compelling the state court to recall its decision and reassign his case to be heard before a different panel of judges."). Here, by contrast, Ms. Searle is not seeking review of the foreclosure judgment, but rather challenging the Appellees' conduct in retaining the excess proceeds from the sale of her home. *Bianchi* is thus inapposite. And under *Crow*, such claims are not barred by *Rooker-Feldman*.

In sum, the District Court's application of *Rooker-Feldman* to dismiss Ms. Searle's complaint cannot be reconciled with governing Supreme Court and Ninth Circuit precedent. The court improperly conflated Ms. Searle's independent

19

constitutional claim for just compensation with a request for direct review of the state court foreclosure judgment. This error requires reversal.

### 2. The District Court Erred by Holding that a Deprivation of Property Necessarily Includes the Deprivation of Surplus Equity.

Respectfully, the District Court erred in holding that "of course" the state court judgment—properly read and credited fully—deprived Ms. Searle of every property interest she had. In other words, it is not the case that the state court judgment is the sole cause of Ms. Searle's injury—because the terms of that judgment did not divest her of <u>all</u> legal claims related to the property.

Indeed, the District Court's order below mirrors the Eighth Circuit's questionable ruling in *Tyler*, which adopted the proposition that there can be no deprivation of property where a state's definition does not encompass the property interest in question. *See Tyler*, 26 F.4th at 793 ("Where state law recognizes no property interest in surplus proceeds from a tax-foreclosure sale conducted after adequate notice to the owner, there is no unconstitutional taking."). The Eighth Circuit's decision, unsurprisingly, closely tracked Hennepin County's briefing on that score. *See* Memorandum of Defendant Hennepin Cnty. in support of Motion to Dismiss, No. 0:20-cv-00889-PJS-BRT, 2020 WL 8182735 (D. Mn. Apr. 24, 2020) ("Put another way, since former owners have no property interest in a property once the state acquires title, they have no claim to any proceeds from a sale of the property."). The Eighth Circuit's decision was, of course, unanimously reversed by

the Supreme Court. *See Tyler*, 598 U.S. at 638 ("Here there was money remaining after Tyler's home was <u>seized and sold</u> by the County to satisfy her past due taxes, along with the costs of collecting them.") (emphasis added).

To reconcile this tension, the Supreme Court in *Tyler* expressly noted that state law is only "one important source" of determining the scope of property rights, among other sources. It wrote: "But state law cannot be the only source. Otherwise, a State could sidestep the Takings Clause by disavowing traditional property interests in assets it wishes to appropriate." *Id.* at 638 (internal quotation marks omitted).

Thus, the Court in *Tyler* announced that it would also look to "traditional property law principles," as well as historical practices, and the Court's precedents. And the Court squarely held that it effected a "classic taking" to use the "toehold of the tax debt" to confiscate more property than was due. In other words, at most, the state court judgment in this case merely echoed Arizona state law regarding what happens after a foreclosure action occurs. But that is not enough to **actually** deprive Ms. Searle of every one of her property rights. Instead, the state court judgment left Ms. Searle with at least one remaining tangible property right that survived the judgment—the right to seek just compensation. That is essentially the holding of *Tyler* itself. *See Tyler*, 598 U.S. at 648 ("The taxpayer must render unto Caesar what is Caesar's, but no more.").

21

Rejecting Hennepin County's argument in *Tyler*, the Court went further. It noted that property rights "cannot be so easily manipulated" by states. *Id.* at 645. Indeed, it expressed the opinion that state action purporting to deprive a property owner of her property through acrobatic definitions was highly questionable, particularly where a state recognized that in other situations, property rights remained. *Id.* at 645 ("Minnesota may not extinguish a property interest that it recognizes everywhere else to avoid paying just compensation when it is the one doing the taking."). In that context, Arizona's recent statutory changes give the lie to the idea that the state court judgment entirely extinguishes Ms. Searle's property rights—because the state fully admits now that there exists a separate property right to post-ownership surplus value, even after an owner has lost all rights to their property itself.[2]

Indeed, under the District Court's logic, *Tyler* itself could not have been issued, because the Supreme Court would have lacked jurisdiction under *Rooker-*

_____

[2] And this was true even before Arizona's recent legislative changes, because the Attorney General recognized as much. *Accord* 2-ER-245 (Attorney General Stipulations) ("Consistent with *Tyler*, Arizona's statutory scheme recognizes that when the State forecloses on an unsatisfied tax lien, it cannot confiscate more than it is owed."); *id.* at 2-ER-246 ("And because the State cannot authorize others to do that which the State is not empowered to do, <u>county treasurers cannot sell to private parties more of a property interest than the State itself could be assigned and retain</u>. Thus, when a private party purchases a tax lien pursuant to A.R.S. §§ 42-18101 et seq., <u>only the interest in the tax lien (including authorized fees, costs, and interest) is conveyed</u>.") (emphasis added).

*Feldman.* As the Eighth Circuit noted in its opinion, Ms. Tyler herself was pursuing relief in federal court <u>after</u> having a foreclosure action resolved against her based on a default judgment. *See Tyler*, 26 F.4th at 793 ("Tyler received notice of the foreclosure action and failed to respond. In April 2012, the county obtained a judgment against Tyler's condominium."). It would be an odd result for this Court to announce that the Supreme Court missed an obvious jurisdictional defect in a watershed Takings case.

Even taking the District Court's ruling as correct, Ms. Searle's just compensation claims under both the U.S. and Arizona Constitutions are premised on the defendants' retention of the surplus equity in her property. She does not assert that the foreclosure judgment itself violated the Takings Clause, but rather that the defendants' failure to compensate her for the equity—as *Tyler* now requires—after obtaining title to the property resulted in an unconstitutional Taking. These claims thus arise from independent conduct, not the judgment itself.

The Supreme Court's decision in *Tyler* confirms that a property owner's right to surplus equity is an independent property interest that survives the foreclosure judgment. *See Tyler*, 598 U.S. at 636 (a "pocketbook injury" accrued to Ms. Tyler even <u>after</u> she had lost all rights to her home); *cf. Jama v. State Farm Mutual Automobile Insurance Company*, No. 22-35449, — F.4th —, 2024 WL 3853695, *11 (9th Cir. Aug. 19, 2024) (a defendant's failure to compensate a plaintiff who is

entitled to money constitutes an injury in fact); *cf. Nieveen*, 317 Neb. At 432 ("[A] former property owner who loses title through the issuance of a tax deed has a protected property interest to the extent the value of his or her property exceeded his or her tax debt.") (emphasis added). *Rooker-Feldman* does not bar such claims.

*Tyler* held that a local government violates the Takings Clause when it "confiscate[s] more [of a taxpayer's] property than is due" to satisfy a tax debt. 598 U.S. at 639. This holding necessarily presumes that the taxpayer retains a property right or interest in the surplus equity, even after a court enters a judgment authorizing the sale of the property. Ms. Searle's just compensation claims merely seek to vindicate this independent property right, not to challenge the foreclosure judgment.

### 3. Ms. Searle's State Law Claim for Unjust Enrichment is Not Barred by the *Rooker-Feldman* Doctrine.

Separately, Ms. Searle's unjust enrichment claim is an independent cause of action that does not seek review and rejection of the state court foreclosure judgment. The elements of unjust enrichment under Arizona law are: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law. *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 49 (Ariz. Ct. App. 2012). None of these elements require Ms. Searle to prove that the state court judgment was erroneous, or disturb the state court judgment at all. Rather, she need only show that Appellees were unjustly enriched by retaining

24

the surplus equity from the sale of her home, a factual allegation that is independent of the legal validity of the foreclosure judgment. *Cf. Knick*, 588 U.S. at 207 (Thomas, J., concurring ) ("When the government repudiates its duty to pay just compensation, its actions are not only unconstitutional but may be tortious as well.") (cleaned up).

The Second Circuit's decision in *Dorce v. City of New York*, 2 F.4th 82 (2d Cir. 2021), is a close parallel. There, the plaintiffs brought various claims, including unjust enrichment, against the city for retaining surplus proceeds from tax lien foreclosure sales. *Id.* at 88-89. The district court dismissed the claims under the *Rooker-Feldman* doctrine, reasoning that they effectively sought to "undo" the state court foreclosure judgments. *Id.* at 103. The Second Circuit reversed, holding that the unjust enrichment claim was independent of the judgments because it arose from the City's retention of surplus equity after the foreclosure sales were complete. *Id.* at 105. The court emphasized that the plaintiffs were "not seeking the return of their property or to void the transfer of title to the City, as would be typical of a challenge to a foreclosure judgment." *Id.*

The same reasoning applies here. Ms. Searle's unjust enrichment claim arises from Appellees' retention of the surplus equity after the foreclosure sale was finalized and the deed was transferred. She does not seek to void the transfer of title or undo the foreclosure judgment itself. Rather, she seeks restitution of the surplus funds that Appellees unjustly retained in excess of the tax debt owed. This is an

25

independent claim that is not barred by *Rooker-Feldman* under *Dorce* and similar cases.

The District Court's treatment of *Dorce* based on differences between the New York City and Arizona foreclosure schemes misses the forest for the trees. While it is true that the New York City code explicitly states that the owner's rights are terminated upon execution of the deed, this is a distinction without meaningful difference. Under both schemes, the relevant deprivation of property occurs after the foreclosure judgment is entered when the deed is transferred, and the government or its assignee retains the surplus proceeds.

The key point is that the plaintiffs' unjust enrichment claims in *Dorce* and this case arise from the defendants' conduct in retaining the excess equity, not from the foreclosure judgments themselves. It does not matter whether the owner's rights are formally terminated at the moment of judgment or at the moment the deed is executed; in either case, the plaintiffs are challenging the subsequent retention of surplus funds, not the legal validity of the judgment or deed transfer.

Moreover, the District Court's hyper-technical focus on the precise wording of the Arizona statute elevates form over substance. The practical reality is that even if Ms. Searle's rights to the property were terminated by operation of law at the moment the foreclosure judgment was entered, Appellees' retention of the surplus proceeds occurred later in time, after the deed was transferred and the sale was

finalized. This is the same sequence of events that occurred in *Dorce*, where the court found *Rooker-Feldman* inapplicable.

The core holding of *Dorce*—that a claim for unjust enrichment based on the retention of surplus equity is independent of the foreclosure judgment—applies with equal force to this case, regardless of whether Arizona law technically terminates the owner's rights at the moment of judgment or at the moment of deed transfer. The District Court's contrary conclusion rests on an unduly rigid and formalistic application of *Rooker-Feldman* that has been rejected by other circuits in factually analogous cases.

Ms. Searle's unjust enrichment claim is a state law cause of action that does not require review and rejection of the foreclosure judgment. It is premised on the independent factual allegation that Appellees unjustly retained the surplus equity from the sale, a claim that could not have been litigated in the foreclosure action itself. This is precisely the type of independent claim that falls outside the narrow *Rooker-Feldman* doctrine. *Exxon Mobil*, 544 U.S. at 293. The District Court's cursory dismissal of this claim under *Rooker-Feldman* was erroneous and should be reversed.

### 4. Ms. Searle's Claims that the Deprivation of her Surplus Equity is an Excessive Fine are not barred by the *Rooker-Feldman* doctrine.

The District Court also erred by dismissing Ms. Searle's excessive fines claims without any meaningful analysis. The Excessive Fines Clause of the Eighth

Amendment prohibits the government from imposing fines that are "grossly disproportional to the gravity of the defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). This prohibition applies to all government-imposed payments that serve at least in part to punish, including civil forfeitures and other monetary penalties. *See Timbs v. Indiana*, 586 U.S. 146, 150–56 (2019).

Ms. Searle's complaint plausibly alleges that the fine imposed by Appellees' retention of her surplus home equity is grossly disproportionate to her underlying offense. She avers that she owed only $1,607.68 in delinquent taxes, but that Appellees retained hundreds of thousands of dollars in surplus equity—an amount well over 200 times greater than her tax debt. 2-ER-111-112. This enormous disparity between the underlying offense and the resulting fine is precisely what the Excessive Fines Clause prohibits.

Despite these compelling allegations, the District Court assumed that *Rooker-Feldman* barred Ms. Searle's excessive fines claim along with her other claims without engaging in the relevant analysis. *See*, *generally*, 1-ER-002. Ms. Searle's excessive fines claims don't implicate the state court foreclosure judgment. But Ms. Searle's argument has never been that the state court foreclosure judgment excessively fined her. It's that Appellees unconstitutionally levied an excessive fine against her by retaining the surplus equity in her home, well beyond the amount of her tax debt. 2-ER-127-128. A claim alleging that Ms. Searle is entitled to recoup

28

the portion of the fine against her that was excessive is therefore not barred by *Rooker-Feldman*.

Indeed, reversing the District Court here would not disturb the foreclosure judgment's transfer of title to Ms. Searle's home at all, but would only give Ms. Searle her day in Court, to try to make Appellees return the surplus equity that they retain currently. *Cf. United States v. Schwarzbaum*, No. 22-14058, — F.4th —, 2024 WL 3997326, *17 (11th Cir. 2024) (reducing maximum statutory penalty from $12,555,813 by $300,000 to $12,255,813, because a portion of the penalty violated the Excessive Fines clause). *Rooker-Feldman* does not bar a claim for relief that merely asserts a right not to be excessively fined by a state actor (like Appellees Allen and Maricopa) or those working in league with state actors, like the private Appellees.

### 5. Even Ms. Searle's Claim That Her Home Was Taken For A Non-Public Use is Not Barred By the *Rooker-Feldman* Doctrine.

This Court has repeatedly held that *Rooker-Feldman* does not bar federal claims alleging that a defendant's ongoing conduct or policies are unconstitutional, even if that conduct is related to a previous state court judgment. *See Maldonado v. Harris*, 370 F.3d 945 (9th Cir. 2004). In *Maldonado*, this Court held that the plaintiff's facial challenge to the statutory scheme was not barred by *Rooker-Feldman*, even though a state court had already rejected an as-applied challenge to the same scheme. *Id.* at 950-51. The Court explained that the plaintiff was not

seeking to overturn the previous state court decision, but rather asserting a general challenge to the state's allegedly unconstitutional policy. *Id.* at 951.

Ms. Searle's Section 1983 claim alleges that the defendants had an ongoing policy of retaining taking homes through tax foreclosure sales in violation of the Takings Clause (and Excessive Fines Clause). 2-ER-129-131. Under *Maldonado*, this claim is not barred by *Rooker-Feldman* merely because it relates to the Appellees' conduct in carrying out the foreclosure judgment against Ms. Searle. The claim does not seek to overturn that judgment, but rather challenges the defendants' ongoing adherence to an allegedly unconstitutional policy. *Id*. at 950 ("Maldonado is not bringing a forbidden de facto appeal because he is not alleging as a legal wrong an erroneous decision from the state court."); *see also Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 606 (9th Cir. 2005) ("The doctrine does not, however, prohibit a plaintiff from presenting a generally applicable legal challenge to a state statute in federal court, even if that statute has previously been applied against him in state court litigation.").

At a minimum, the District Court's decision below ignores the crucial distinction between the court-approved foreclosure of her right to redeem, and Appellees'—including state actors like Maricopa and Treasurer John Allen—of violations of the Constitution. Appellees' unconstitutional deprivation of Ms. Searle's property has never been a part of the tax foreclosure proceedings. *Feldman*,

460 U.S. at 487 (holding that a federal court may entertain a facial challenge to a state bar rule, even though that rule had been applied to the plaintiff in a state court proceeding). Nor could Ms. Searle have relied on *Tyler* before that case was decided in May 2023.

Most notably, as Ms. Searle has stated previously, she is not appealing the state court foreclosure judgment itself. She does not allege that the state court made any error of law, or that this Court must review the reasoning of any state court opinion. *See In re Philadelphia Entm't & Dev. Partners*, 879 F.3d 492, 500 (3rd Cir. 2018) ("[T]he *Rooker–Feldman* doctrine would not apply because the plaintiff is not complaining of legal injury caused by a state court judgment because of a legal error committed by the state court.") (internal quotation marks omitted); *Sung Cho v. City of New York*, 910 F.3d 639, 647 (2d Cir. 2018) (The *Rooker-Feldman* doctrine does not apply where a state court judgment merely "ratifies" private conduct that is the target of the plaintiff's suit).

Instead, Ms. Searle sues the County because it gave a third-party the right to deprive her of property without just compensation, among other things. Such a claim falls squarely outside of the *Rooker-Feldman* doctrine. *See, e.g.*, *Pell v. Nuñez*, 99 F.4th 1128, 1135 n.3 (9th Cir. 2024) ("Complaints [that] challenge the interpretation and application of a statute … do not implicate the *Rooker-Feldman* doctrine.") (cleaned up); *cf. McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006)

31

(rejecting *Rooker-Feldman* where the plaintiff challenged a vague and overbroad state statute, and stating "these claims do not assert injuries from the state court judgments."); *Vuyanich v. Smithton Borough*, 5 F.4th 379, 387 (3rd Cir. 2021) ("[W]ithout reviewing or rejecting the state court order, that Court could have held unconstitutional the ordinance of the Borough ostensibly authorizing it to seize the Vuyaniches' property.").

In sum, each of Ms. Searle's claims arises from alleged constitutional violations that are separate and distinct from the state court foreclosure judgment. The district court erred by characterizing these claims as a de facto appeal of that judgment and dismissing them under *Rooker-Feldman*, denying Ms. Searle of any federal forum to litigate her rights. *Cf. Knick*, 588 U.S. at 191 ("[I]t is the existence of the Fifth Amendment right that allows the owner to proceed directly to federal court under § 1983.").

This Court's precedents further illustrate the district court's error in applying *Rooker-Feldman* to dismiss Ms. Searle's independent constitutional claims, even where those claims might achieve a result in tension with the state court judgment. In *Noel v. Hall*, this court held that a plaintiff is barred by *Rooker-Feldman* if "the federal plaintiff [is] complaining of legal injury caused by a state court judgment <u>because of a legal error committed by the state court</u>." (emphasis added). *Id.* at 1164.

32

In other words, to be barred by *Rooker-Feldman*, the plaintiff has to not just complain of an injury caused by a state court judgment, but must <u>also</u> contend that the state court judgment was <u>erroneous</u>. *Id.* at 1164 ("If a federal plaintiff asserts as a legal wrong an <u>allegedly erroneous decision</u> by a state court and seeks relief from a state court judgment based on that decision, *Rooker–Feldman* bars subject matter jurisdiction in federal district court.") (emphasis added); *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) (*Rooker-Feldman* "prevents federal courts from <u>second-guessing</u> state court decisions ….") (emphasis added); *Doe & Associates Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001) ("Where the district court must hold that <u>the state court was wrong</u> in order to find in favor of the plaintiff, the issues presented to both courts are inextricably intertwined."); *Bell v. City of Boise*, 709 F.3d 890, 894 (9th Cir. 2013) "[E]ven if a plaintiff seeks relief from a state court judgment, such a suit is a forbidden de facto appeal only if the plaintiff also <u>alleges a legal error</u> by the state court.") (emphasis added); *id.* at 897 ("Although Plaintiffs sought relief designed to remedy injuries suffered from a state court judgment, <u>they did not allege before the court that the state court committed legal error</u>, nor did they seek relief from the state court judgment itself.") (emphasis added).

This is perhaps most succinctly described by the court in *Exxon*:

Nor does § 1257 stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court

a matter previously litigated in state court. If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

*Exxon*, 544 U.S. 280, 293 (2005) (quoting *GASH Assocs. v. Rosemont,* 995 F.2d 726, 728 (7th Cir. 1993) (cleaned up).

Here, by contrast, Ms. Searle has never contended that the state court erred, or that its judgment must be set aside. She has never contended that the state court judgment itself is subject to appeal or challenge. *Cf. Manufactured Home Communities Inc.*, 420 F.3d at 1030 ("MHC's complaint <u>does not directly challenge a state court's factual or legal conclusion</u>. MHC's complaint to the district court is, therefore, not a forbidden appeal under *Rooker–Feldman*.") (emphasis added). The Court should therefore allow Ms. Searle's claims for a Taking without public use to proceed.

One Connecticut District Court recently confirmed this reading of the *Rooker-Feldman* doctrine specifically with respect to post-*Tyler* suits:

> But Traylor's claims against the town under the Takings Clause, Excessive Fines Clause, and the Connecticut Constitution were not raised and decided in state court prior to the initiation of this case. Indeed, these claims appear to be modeled on the United States Supreme Court's recent decision in *Tyler v. Hennepin County*, 598 U.S. 631 (2023), which was decided in May 2023 after Traylor filed this lawsuit. Accordingly, the *Rooker-Feldman* doctrine does not bar those claims against the town.

*Traylor v. Pacciuco, LLC*, No. 3:23-cv-00329 (JAM), 2024 WL 839523, *5 (D. Conn. Feb. 28, 2024); *accord In re Philadelphia Entm'r & Dev. Partners*, 879 F.3d at 500 ("When the plaintiff attempts to litigate previously litigated matters, the federal court has jurisdiction as long as the federal plaintiff presents some independent claim, even if that claim denies a legal conclusion reached by the state court."); *Unknown Party v. Arizona Bd. of Regents*, No. CV-18-01623-PHX-DWL, 2019 WL 7282027, *7 (D. Ariz. Dec. 27, 2019) ("[T]his is not the sort of case that triggers *Rooker-Feldman*. Doe isn't suing the Maricopa County Superior Court, isn't asking this Court to directly overturn any aspect of that court's October 29, 2018 decision, and is fundamentally complaining of injuries caused by adverse parties…, not by the Maricopa County Superior Court…"); *Rosier v. Strobel*, No. CV-14-01399-PHX-JJT, 2014 WL 11515026 (D. Ariz. Dec. 23, 2014) ("[W]hile *Rooker-Feldman* bars federal district court review of injuries caused by state court judgments, it does not preclude review of injuries caused by another party.").

An even more robust version of this doctrine is the "reasonable opportunity" doctrine. *See Allison v. State Farm Mut. Auto. Ins. Co.*, 266 Fed. Appx. 627, 628 (9th Cir. 2008) ("The Allisons cite to cases from outside this circuit that hold, in substance, that *Rooker–Feldman* does not apply where the plaintiff asserting claims in the federal district court did not have a reasonable opportunity to raise the relevant issues in the state court proceedings. We have recognized similar limitations on

35

*Rooker–Feldman*."); *Lee v. Walters*, No. Civ. 95–274–ST, 2002 WL 31440883, *2 (D. Or. Jan. 30, 2002) ("*Rooker–Feldman* bars only federal claims that the plaintiff had a reasonable opportunity to raise in state court.").

Here, of course, there was <u>no</u> opportunity for Ms. Searle to raise *Tyler*—a case decided in 2023—and relevant law in Arizona contradicted that very decision. 2-ER-114. More importantly, even if Ms. Searle had the foresight to argue that the retention of surplus equity violated the Takings Clause, any such argument would have been doomed under the Arizona case law in effect at the time. *See Automatic Art, L.L.C. v. Maricopa County*, No. CV 08-1484-PHX-SRB, 2010 WL 11515708, *7 (D. Ariz. Mar. 17, 2010) ("The Arizona statutes implemented by Defendants are constitutional."); *see also Ray v. Frye*, 119 P.2d 941, 943 (Ariz. 1941). Application of the *Rooker-Feldman* doctrine to Ms. Searle would therefore be manifestly unjust.

Moreover, the District Court's expansive view of *Rooker-Feldman* would lead to absurd results. Under that view, a plaintiff would be forever barred from bringing a federal constitutional challenge to a state law that was applied to them in a prior state court proceeding, even if the Supreme Court later held that law to be unconstitutional. That cannot be the law.

The District Court also erred in suggesting that Ms. Searle's claims are barred by *Rooker-Feldman* merely because they relate to the administration of a previous state court judgment. 1-ER-002. This Court has squarely rejected such a broad

36

reading of *Rooker-Feldman*. In *Carmona v. Carmona*, 603 F.3d 1041 (9th Cir. 2010), for example, the Court held that a plaintiff's claim challenging the implementation of a state court divorce decree was not barred, even though the claim "intruded upon the state court's determination of the property rights." *Id.* at 1051. The Court explained that the claim did not assert any legal error by the state court, but rather challenged the defendant's "actions in administering [the plaintiff's] benefits." *Id.*

*Carmona* and *Maldonado* make clear that *Rooker-Feldman* does not bar a plaintiff from challenging the manner in which state officials implement or enforce a previous state court judgment, so long as the plaintiff does not seek review of the judgment itself. Ms. Searle's claims fit comfortably within this rule, as she challenges only the Appellees' unconstitutional and unlawful conduct, not the foreclosure judgment that allowed the sale of her home. The District Court's cramped reading of *Rooker-Feldman* would lead to untenable results, and cannot be squared with this Court's precedents. Under the District Court's logic, there would be no federal remedy for even the most egregious constitutional violations committed by state officials in the course of enforcing a state court judgment.

Finally, the District Court overlooked the critical distinction between claims that challenge a state court's rationale and claims that challenge a defendant's independent conduct. The Third Circuit's decision in *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010), is particularly

instructive. There, the plaintiff alleged that various defendants conspired to engineer its loss in a previous state court action. *Id.* at 161-62. The District Court held that the *Rooker-Feldman* doctrine barred these claims because they effectively sought to undo the state court's judgment. *Id.* at 166. The Third Circuit reversed, holding that the plaintiff's claims were not an attack on the state court judgment itself, but rather on the defendants' alleged misconduct in prosecuting the state action. *Id.* at 171. The court emphasized that the alleged misconduct did not occur until after the state court's judgment was entered, and thus could not be considered a challenge to the judgment itself. *Id.* at 172.

The Third Circuit's reasoning applies with full force here. Ms. Searle's claims arise from the Appellees' conduct in committing a Taking (and levying an Excessive Fine) after the foreclosure judgment was entered. Like the claims in *Great Western*, these claims are "not an attack on the state court judgment itself," but rather on the defendants' conduct. 615 F.3d at 171.

In sum, the District Court's application of *Rooker-Feldman* to dismiss Ms. Searle's claims rests on a fundamental misunderstanding of the doctrine's narrow scope. Under Supreme Court and Ninth Circuit precedent, *Rooker-Feldman* does not bar independent claims arising from a defendant's unconstitutional conduct in enforcing a state court judgment, so long as those claims do not seek direct review of the judgment itself. Ms. Searle's claims fall squarely within this category of

38

permissible challenges. The District Court's holding to the contrary was error and must be reversed.

## II. Separately, *the Rooker-Feldman* Doctrine Does Not Bar Ms. Searle's Claims for Declaratory Relief.

The District Court compounded its error by holding that *Rooker-Feldman* bars all of Ms. Searle's constitutional claims, even to the extent that they seek declaratory relief. *Skinner v. Switzer*, 562 U.S. 521, 532 (2011) ("If a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court.") (cleaned up); *id.* at 533 ("[A] state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action."); *see also Reed v. Goertz*, 598 U.S. 230, 235 (2023) (rejecting application of the *Rooker-Feldman* because the plaintiff did "not challenge the adverse state-court decisions themselves, but rather targets as unconstitutional the Texas statute they authoritatively construed."); *Cogan v. Trabucco*, — F.4th —, 2024 WL 3883685, *7 (9th Cir. Aug. 21, 2024) ("*Feldman*, however, also placed an important limitation on the doctrine by drawing a distinction between challenging a particular as-applied state court decision and bringing a broader challenge to an underlying state statute governing such a decision.").

Here, Ms. Searle seeks a declaration that Arizona's tax lien foreclosure scheme violates the Takings Clause and Excessive Fines Clause, most prominently

by allowing the government and its assignees to retain surplus proceeds from tax sales.[3] The Arizona Attorney General has already conceded this point with respect to just compensation claims, in its judicial admissions in this very case. 2-ER-246 ("[U]nder *Tyler*, A.R.S. § 42-18204(B) is unconstitutional to the extent it purports to extinguish a dispossessed owner's property interest in the sale proceeds or value of the equity that exceed what the State is owed and could retain by statute.").

Ms. Searle's Takings claims—along with the Attorney General's concession that her claim was valid—only became apparent after *Tyler*. *See Zeyen v. Bonneville Joint District, #93*, 2024 WL 3909574, *7-*8 (9th Cir. Aug. 23, 2024) ("Therefore, to be cognizable under the Takings Clause, a constitutionally protected property right must be vested. … The Supreme Court has required a high threshold of certainty before finding that an entitlement has vested.") (internal quotation marks and brackets omitted). Granting Ms. Searle relief—now that it has become absolutely

---

[3] No party below alleged that Ms. Searle's claim for declaratory relief was moot, based on the change in Arizona law. And that is no surprise, because SB 1431 is not retroactive, so Ms. Searle has an ongoing injury that has not been remedied. *See, e.g., Federal Bureau of Investigation v. Fikre*, 601 U.S. 234, 240 (2024) (a litigant's complaint is moot only when "a complaining party manages to secure outside of litigation all the relief he might have won in it"); *Fikre v. Federal Bureau of Investigation*, 904 F.3d 1033, 1037 (9th Cir. 2018) ("Regarding mootness, a defendant's voluntary cessation does not moot a case unless (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.") (emphasis added and internal quotation marks omitted).

clear that Arizona's statutory scheme was unconstitutional—would not disturb the state court foreclosure judgment, but would only establish that she suffered a property deprivation under the prior Arizona law. Such an outcome could lead to an award of nominal damages, an injunction, or bolster her case for a motion to reconsider her state foreclosure action if she prevails in this matter.

At a minimum, Ms. Searle's claim that Arizona law violates the Constitution by not providing just compensation is squarely within this tradition. As the Supreme Court has said, the Takings Clause is generally designed "to secure compensation in the event of otherwise proper interference amounting to a taking." *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 315 (1987). In other words, the Takings Clause does not prohibit the government from taking property for public use, but only requires that just compensation be paid when a Taking occurs. *Id*. at 314. As the Supreme Court recently explained, a property owner who proves a violation of the Takings Clause "is not entitled to injunctive relief to prevent the taking," but only "to a determination of just compensation" for the taking. *Knick*, 588 U.S. at 199.

These principles make clear that a declaratory judgment finding a violation of the Takings Clause that requires just compensation would not undo the underlying state action transferring title to the plaintiff's property. Rather, such a judgment would only establish that the government's action effected a Taking, and that Ms.

41

Searle is entitled to just compensation. The state court judgment authorizing the property transfer would remain intact.

Further, holding that *Rooker-Feldman* bars Ms. Searle's declaratory relief claims would lead to untenable results. Under the District Court's logic, no plaintiff could ever bring a federal Takings claim challenging a state law that was previously applied to them in a state court proceeding. Any such claim would necessarily be barred as an impermissible attack on the state court judgment applying that law. But that would effectively nullify the Takings Clause in a wide swath of cases, as it would prevent property owners from ever seeking compensation for Takings effected through state court judgments.

The Supreme Court has never endorsed such a sweeping view of *Rooker-Feldman*. To the contrary, the Court has consistently entertained federal takings claims challenging state and local laws that were previously enforced against the plaintiffs in state court, without any suggestion that *Rooker-Feldman* posed an obstacle. In *Knick*, for example, the plaintiff brought a takings challenge to a township ordinance requiring her to allow public access to her property, even though a state court had previously enforced the ordinance against her. 588 U.S. at 186. The Supreme Court held that the plaintiff's takings claim was ripe without any discussion of *Rooker-Feldman*, even though the claim effectively sought to collaterally attack the state court's enforcement order. *Id*.

42

In short, the District Ccourt's holding that *Rooker-Feldman* bars Ms. Searle's claims for declaratory relief is both legally erroneous and deeply troubling. It would transform *Rooker-Feldman* from a narrow doctrine about allocation of jurisdiction into a sweeping immunity for unconstitutional state laws, so long as those laws were enforced against the plaintiff in a prior state court proceeding. This Court should reject such a radical expansion of *Rooker-Feldman*, and hold that Ms. Searle is entitled to seek a declaration of her rights under the Takings Clause and Excessive Fines Clause in federal court.

## III. Defendant John Allen Should Not Have Been Dismissed Because He Did Not Respond to the Second Amended Complaint.

The Second Amended Complaint, filed on April 24, 2024, names the following Defendants: (1) John M. Allen, in his official capacity; (2) Arapaho LLC; (3) American Pride Properties, LLC; (4) Maricopa County; and (5) various pseudonymous defendants. 2-ER-108.

On May 6, 2024, Maricopa County filed its motion to dismiss the Second Amended Complaint. 2-ER-058. No other party moved to dismiss the operative complaint filed on April 24, 2024, although Appellees Arapaho and American Pride had moved to dismiss the previously-filed Amended Complaint, which had been superseded. *Compare* 3-ER-294 (Amended Complaint, filed January 26, 2024) with 2-ER-252 (Private Appellees' Motion to Dismiss, filed February 29, 2024). This

itself was anomalous. *See Pacific Bell Telephone Co. v. linkLine Communications, Inc.*, 555 U.S. 438, 456 n.4 (2009) ("Normally, an amended complaint supersedes the original complaint.").

Appellant flagged the broader anomaly related to Appellee John Allen in the Opposition to Maricopa County's Joinder. *See* 2-ER-054 ("Defendant Allen has not responded to the Complaint."); *id.* at 2-ER-055 ("The County offers no reason—and advances no request, even—for Defendant Allen to be dismissed from this suit."). Ms. Searle further noted that Mr. Allen was the proper defendant against whom to seek declaratory relief, based on an *Ex Parte Young* theory. *Id.* at 19 ("Under the well-established principle of *Ex Parte Young*, a public official who enforces state law may be named as a defendant in order to obtain prospective relief under 42 U.S.C. § 1983.").[4]

Appellee Maricopa County filed no reply brief asserting that Mr. Allen was in fact subsumed within its motion to dismiss, or contending that Appellee Allen was

---

[4] Ms. Searle prayed for relief from the District Court in the form of declaratory relief. *See, e.g.*, 2-ER-145 ("Find and declare that Defendants' taking and sale of Plaintiff's property, including all equity therein, was not attended by payment or securing just compensation and as such, violates the United States and Arizona Constitutions."); *id.* ("Find and declare that relevant provisions of Title 42, Chapter 18 of the Arizona Revised Statutes are unconstitutional under the United States and Arizona Constitutions, causing such confiscations and sales to be null and void and in violation of the United States and Arizona Constitutions."). To the extent that the Court considers these prayers so broad that they necessarily implicate the state court judgment, such a conclusion does not preclude amendment with a narrower prayer for relief.

not the proper defendant against whom to seek prospective relief. Nor did it contend that Mr. Allen was entitled to complete immunity from suit under *Rooker-Feldman*. Because he is not. *Cf. Skinner*, 562 U.S. at 532-33 (2011) ("[A] state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action."); *Pell*, 99 F.4th at 1135 n.3 (9th Cir. 2024) ("Complaint[s] [that] challenge[] the interpretation and application of a statute … do not implicate the *Rooker-Feldman* doctrine.").

Thus, even if the Court largely affirms the District Court, Ms. Searle respectfully requests that the Court reverse the District Court with respect to its dismissal of Mr. Allen as a Defendant.

## Conclusion

Ms. Searle was unconstitutionally deprived of her property interest pursuant to Arizona law. Even the Attorney General of the State concedes that point. The question is whether Ms. Searle may bring her constitutional claims in a federal forum. Ms. Searle urges this Court to reverse the District Court's dismissal of her complaint.

Date: September 16, 2024

/s/ William E. Trachman
William E. Trachman
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021

wtrachman@mslegal.org

Veronica Lucero
Davillier Law Group LLC
4105 N. 20th St., Ste. 110
Phoenix, AZ 85016
Tele: (602) 730-2985 ext. 705
Fax: (602) 801-2539
vlucero@davillierlawgroup.com
*Attorneys for Appellant Christine M. Searle*

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

*Instructions for this form:*

*http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** 24-4819

The undersigned attorney or self-represented party states the following: ☒ I am unaware of any related cases currently pending in this court.

☐ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

☐ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** /s William E. Trachman     **Date:** September 16, 2024_____

47

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*

[http://www.ca9.uscourts.gov/forms/form08instructions.pdf](http://www.ca9.uscourts.gov/forms/form08instructions.pdf)

**9th Cir. Case Number(s)** 24-4819

I am the attorney or self-represented party.

**This brief contains 11,032 (word limit is 14,000) words**, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief (select only one):

☒ complies with the word limit of Cir. R. 32-1.

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a death penalty case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because (select only one):

☐ it is a joint brief submitted by separately represented parties;

48

☐ a party or parties are filing a single brief in response to multiple briefs; or

☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated _____.

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Signature /s William E. Trachman          Date: September 16, 2024

49

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

**Form 15. Certificate of Service for Electronic Filing**

*Instructions for this form:*

[http://www.ca9.uscourts.gov/forms/form15instructions.pdf](http://www.ca9.uscourts.gov/forms/form15instructions.pdf)

**9th Cir. Case Number(s)** 24-4819

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants (list each name and mailing/email address):

**Description of Document(s)** (required for all documents):

Opening appellate brief

Signature /s William E. Trachman_____    Date: September 16, 2024

No. 24-4819

─────────────────────────────────────────────

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

─────────────────────────────────────────────

Christine M. Searle
*Plaintiff-Appellant*,

v.

John M. Allen, et al.,
*Defendant-Appellees*.

─────────────────────────────────────────────

On Appeal from the United States District Court for the District of Arizona
Civil Case No. 24-CV-00025-JJT, The Honorable John J. Tuchi

─────────────────────────────────────────────

**Appellant's Opening Brief Addendum**
─────────────────────────────────────────────

William E. Trachman               Veronica Lucero
Grady J. Block                    Davillier Law Group LLC
Mountain States Legal Foundation  4105 N. 20th St., Ste. 110
2596 S. Lewis Way                 Phoenix, AZ 85016
Lakewood, Colorado 80227          Tele: (602) 730-2985 ext. 705
Tele: (303) 292-2021              Fax: (602) 801-2539
wtrachman@mslegal.org             vlucero@davillierlawgroup.com


*Attorneys for Appellant Christine M. Searle*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ......................................................................... i

Ariz. Const. art. 9, § 7 ......................................................................1

Ariz. Const. art. 2, § 15 ....................................................................2

Ariz. Const. art. 2, § 17......................................................................3

A.R.S. § 42-18204 (pre-amendment).................................................4

A.R.S. § 42-18205 (pre-amendment).................................................6

U.S. Const. amend. V ........................................................................7

U.S. Const. amend. VIII.....................................................................8

2024 Ariz. Legis. Serv. Ch. 176 (S.B. 1431) (WEST) .......................9

Arizona Revised Statutes Annotated
    Constitution of the State of Arizona (Refs & Annos)
        Article IX. Public Debt, Revenue, and Taxation

A.R.S. Const. Art. 9 § 7

§ 7. Gift or loan of credit; subsidies; stock ownership; joint ownership

Currentness

Section 7. Neither the state, nor any county, city, town, municipality, or other subdivision of the state shall ever give or loan its credit in the aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association, or corporation, or become a subscriber to, or a shareholder in, any company or corporation, or become a joint owner with any person, company, or corporation, except as to such ownerships as may accrue to the state by operation or provision of law or as authorized by law solely for investment of the monies in the various funds of the state.

**Credits**

Amended by Laws 1998, S.C.R. 1007, § 3, approved election Nov. 3, 1998, eff. Nov. 23, 1998.

A. R. S. Const Art. 9 § 7, AZ CONST Art. 9 § 7
Current through legislation of the Second Regular Session of the Fifty-Sixth Legislature (2024), effective as of June 21, 2024.

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Arizona Revised Statutes Annotated
 Constitution of the State of Arizona (Refs & Annos)
  Article II. Declaration of Rights

A.R.S. Const. Art. 2 § 15

§ 15. Excessive bail; cruel and unusual punishment

Currentness

Section 15. Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.

A. R. S. Const Art. 2 § 15, AZ CONST Art. 2 § 15
Current through legislation of the Second Regular Session of the Fifty-Sixth Legislature (2024), effective as of June 21, 2024.

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Arizona Revised Statutes Annotated
    Constitution of the State of Arizona (Refs & Annos)
        Article II. Declaration of Rights

A.R.S. Const. Art. 2 § 17

§ 17. Eminent domain; just compensation for private property taken; public use as judicial question

Currentness

Section 17. Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches, on or across the lands of others for mining, agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having first been made, paid into court for the owner, secured by bond as may be fixed by the court, or paid into the state treasury for the owner on such terms and conditions as the legislature may provide, and no right of way shall be appropriated to the use of any corporation other than municipal, until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived as in other civil cases in courts of record, in the manner prescribed by law. Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such without regard to any legislative assertion that the use is public.

**Credits**

Amendment approved election Nov. 3, 1970, eff. Nov. 27, 1970.

A. R. S. Const Art. 2 § 17, AZ CONST Art. 2 § 17
Current through legislation of the Second Regular Session of the Fifty-Sixth Legislature (2024), effective as of June 21, 2024.

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Red Flag - Severe Negative Treatment

Enacted Legislation   Amended by   2024 Ariz. Legis. Serv. Ch. 176 (S.B. 1431) (WEST),

🟨 KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

Arizona Revised Statutes Annotated
   Title 42. Taxation (Refs & Annos)
      Chapter 18. Collection and Enforcement (Refs & Annos)
         Article 5. Judicial Foreclosure of Right of Redemption

A.R.S. § 42-18204

§ 42-18204. Judgment foreclosing right to redeem; effect

Effective: September 26, 2008
Currentness

**A.** In an action to foreclose the right to redeem, if the court finds that the sale is valid and that the tax lien has not been redeemed, the court shall enter judgment:

1. Foreclosing the right of the defendant to redeem.

2. Directing the county treasurer to expeditiously execute and deliver to the party in whose favor judgment is entered, including the state, a deed conveying the property described in the certificate of purchase.

**B.** After entering judgment the parties whose rights to redeem the tax lien are thereby foreclosed have no further legal or equitable right, title or interest in the property subject to the right of appeal and stay of execution as in other civil actions.

**C.** The foreclosure of the right to redeem does not extinguish any easement on or appurtenant to the property.

**D.** The foreclosure of the right to redeem does not extinguish any lien for an assessment levied pursuant to title 48, chapter 4, 6, 14 or 18,[1] or § 9-276.

**Credits**

Added by Laws 1997, Ch. 150, § 172, eff. Jan. 1, 1999. Amended by Laws 2001, Ch. 249, § 2; Laws 2008, Ch. 85, § 4.

---

**Footnotes**

---

1        Sections 48-501 et seq., 48-901 et seq., 48-2001 et seq., 48-2601 et seq.

A. R. S. § 42-18204, AZ ST § 42-18204

Current through legislation of the Second Regular Session of the Fifty-Sixth Legislature (2024), effective as of June 21, 2024.

---

**End of Document**           © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Red Flag - Severe Negative Treatment

Enacted Legislation   Amended by   2024 Ariz. Legis. Serv. Ch. 176 (S.B. 1431) (WEST),

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

Arizona Revised Statutes Annotated
  Title 42. Taxation (Refs & Annos)
    Chapter 18. Collection and Enforcement (Refs & Annos)
      Article 5. Judicial Foreclosure of Right of Redemption

A.R.S. § 42-18205

§ 42-18205. County treasurer's deed; form

Currentness

**A.** On receiving a certified copy of a judgment foreclosing the right to redeem and a fee of fifty dollars per parcel, the county treasurer shall execute and deliver to the party in whose favor the judgment was entered a deed conveying the property described in the judgment.

**B.** The deed shall include the following information:

1. The date, court action number and name of the judgment.

2. The name of the purchaser.

3. The property description.

4. The date of the conveyance.

5. A formal acknowledgment by the treasurer.

**Credits**

Added by Laws 1997, Ch. 150, § 172, eff. Jan. 1, 1999. Amended by Laws 2004, Ch. 232, § 6.

A. R. S. § 42-18205, AZ ST § 42-18205
Current through legislation of the Second Regular Session of the Fifty-Sixth Legislature (2024), effective as of June 21, 2024.

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. ADDENDUM 0006

Case: 24-4819, 09/16/2024, DktEntry: 12.1, Page 69 of 80

**Amendment V. Grand Jury Indictment for Capital Crimes;..., USCA CONST Amend. V**

United States Code Annotated
   Constitution of the United States
      Annotated
         Amendment V. Grand Jury; Double Jeopardy; Self-Incrimination; Due Process; Takings

U.S.C.A. Const. Amend. V

Amendment V. Grand Jury Indictment for Capital Crimes; Double Jeopardy;
Self-Incrimination; Due Process of Law; Takings without Just Compensation

Currentness

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

<Historical notes and references are included in the full text document for this amendment.>

<For Notes of Decisions, see separate documents for clauses of this amendment:>

<USCA Const. Amend. V--Grand Jury clause>

<USCA Const. Amend. V--Double Jeopardy clause>

<USCA Const. Amend. V--Self-Incrimination clause>

<USCA Const. Amend. V-- Due Process clause>

<USCA Const. Amend. V--Takings clause>

U.S.C.A. Const. Amend. V, USCA CONST Amend. V
Current through P.L. 118-78. Some statute sections may be more current, see credits for details.

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case: 24-4819, 09/16/2024, DktEntry: 12.1, Page 70 of 80

**Amendment VIII. Excessive Bail, Fines, Punishments, USCA CONST Amend. VIII**

United States Code Annotated
   Constitution of the United States
      Annotated
         Amendment VIII. Excessive Bail, Fines, Punishments

U.S.C.A. Const. Amend. VIII

Amendment VIII. Excessive Bail, Fines, Punishments

Currentness

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S.C.A. Const. Amend. VIII, USCA CONST Amend. VIII
Current through P.L. 118-78. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case: 24-4819, 09/16/2024, DktEntry: 12.1, Page 71 of 80

AZ LEGIS 176 (2024), 2024 Ariz. Legis. Serv. Ch. 176 (S.B. 1431) (WEST)

2024 Ariz. Legis. Serv. Ch. 176 (S.B. 1431) (WEST)

ARIZONA 2024 LEGISLATIVE SERVICE

Second Regular Session of the Fifty-Sixth Legislature

Additions are indicated by **Text**; deletions by
~~Text~~ .
Vetoes are indicated by ~~Text~~ ;
stricken material by ~~Text~~ .

CHAPTER 176

S.B. 1431

AN ACT AMENDING SECTIONS 12–1551, 42–18152, 42–18202, 42–18204, 42–18205
AND 42–18206, ARIZONA REVISED STATUTES; AMENDING TITLE 42, CHAPTER 18,
ARIZONA REVISED STATUTES, BY ADDING ARTICLE 6; RELATING TO PROPERTY TAX.

Be it enacted by the Legislature of the State of Arizona:

Section 1. Section 12–1551, Arizona Revised Statutes, is amended to read:

<< AZ ST § 12–1551 >>

**§ 12–1551. Issuance of writ of execution; limitation; renewal; death of judgment debtor; applicability**

**A.** The party in whose favor a judgment is given, at any time within ten years after entry of the judgment and within ten years after any renewal of the judgment either by affidavit or by an action brought on it, may have a writ of execution or other process issued for its enforcement.

**B.** An execution or other process shall not be issued on a judgment after the expiration of ten years from the date of its entry unless the judgment is renewed by affidavit or process pursuant to section 12–1612 or an action is brought on it within ten years after the date of the entry of the judgment or of its renewal.

**C.** The court shall not issue a writ of execution after the death of the judgment debtor unless it is for the recovery of real or personal property or enforcement of a lien.

**D.** This section applies to:

1. All judgments that were entered on or after August 3, 2013.

2. All judgments that were entered on or before August 2, 2013 and that were renewed on or before August 2, 2018, except that a writ of execution or other process may not be issued for a judgment entered on or before August 2, 2013 that was not renewed on or before August 2, 2018.

**E.** This section does not apply to:

1. Criminal restitution orders entered pursuant to section 13–805.

2. Written judgments and orders for child support and spousal maintenance and to associated costs and attorney fees.

Case: 24-4819, 09/16/2024, DktEntry: 12.1, Page 72 of 80

AZ LEGIS 176 (2024), 2024 Ariz. Legis. Serv. Ch. 176 (S.B. 1431) (WEST)

3. Civil judgments obtained by this state that are either of the following:

(a) Entered on or after September 13, 2013.

(b) Entered before September 13, 2013 and that were current and collectable under the laws applicable on September 13, 2013.

**4. Judgments directing the sale of property pursuant to title 42, chapter 18, article 6.**

Sec. 2. Section 42–18152, Arizona Revised Statutes, is amended to read:

<< AZ ST § 42–18152 >>

**§ 42–18152. When lien may be fully redeemed; partial payment refund**

**A.** A real property tax lien may be fully redeemed at any time:

1. Within three years after the date of **tax lien** sale.

2. After three years but before the delivery of a treasurer's deed to the ~~purchaser~~ **certificate of purchase holder** or the ~~purchaser's~~ **certificate of purchase holder's** heirs or assigns**.**

**B.** A lien that has been partially redeemed under section 42–18056, subsection C must be fully redeemed before the delivery of a treasurer's deed to the purchaser.

**C.** The county treasurer shall refund all partial payment amounts impounded under section 42–18056, subsection E~~,~~ to the person or persons or their heirs or assigns within thirty days after delivering the treasurer's deed to the purchaser **or entry of a judgment directing the sale of the property for excess proceeds pursuant to article 6 of this chapter**.

Sec. 3. Section 42–18202, Arizona Revised Statutes, is amended to read:

<< AZ ST § 42–18202 >>

**§ 42–18202. Notice**

**A.** At least thirty days before filing an action to foreclose the right to redeem under this article, but not more than one hundred eighty days before such an action is commenced or may be commenced under section 42–18201, the ~~purchaser~~ **certificate of purchase holder** shall send notice of intent to file the foreclosure action by certified mail to:

1. The property owner of record according to the records of the county recorder in the county in which the property is located or to all of the following:

(a) The property owner, as determined by section 42–13051, at the property owner's mailing address according to the records of the county assessor in the county in which the property is located.

(b) The situs address of the property, if shown on the tax roll and if different from the property owner's address under subdivision (a) of this paragraph.

(c) The tax bill mailing address according to the records of the county treasurer in the county in which the property is located if that address is different from the addresses under subdivisions (a) and (b) of this paragraph.

Case: 24-4819, 09/16/2024, DktEntry: 12.1, Page 73 of 80

AZ LEGIS 176 (2024), 2024 Ariz. Legis. Serv. Ch. 176 (S.B. 1431) (WEST)

2. The treasurer of the county in which the real property is located. The county treasurer may not accept partial payments under section 42–18056, subsection C after the date the treasurer receives a notice of action to foreclose the right to redeem.

**B.** The notice shall include:

1. The property owner's name.

2. The real property tax parcel identification number.

3. The county assessor's description of the real property.

4. The certificate of purchase number.

5. The proposed date of filing the action.

**6. The following statement in substantially the following form:**

**Notice: If you believe that your property has value beyond the tax burden on the property and you do not want to lose any interest or equity in the property, you must request an excess proceeds sale pursuant to section 42–18204, Arizona Revised Statutes.**

**C.** If the ~~purchaser~~ **certificate of purchase holder**:

1. Complies with subsection A, paragraph 1, subdivisions (a), (b) and (c) of this section, the ~~purchaser~~ **certificate of purchase holder** is considered to have substantially complied with the requirements of this section and is not required to send the notice to any other address.

2. Fails to send the notice required by this section, the ~~purchaser~~ **certificate of purchase holder** is considered to have substantially failed to comply with this section. A court may not enter any judgment to foreclose the right to redeem under this article until the ~~purchaser~~ **certificate of purchase holder** sends the notice required by this section.


Sec. 4. Section 42–18204, Arizona Revised Statutes, is amended to read:

<< AZ ST § 42–18204 >>

**§ 42–18204. Judgment foreclosing right to redeem; effect**

**A.** In an action to foreclose the right to redeem**:** ~~,~~

**1.** If the court finds that the **tax lien** sale is valid**,** ~~and that~~ the tax lien has not been redeemed **and the defendant's request for an excess proceeds sale is unreasonable or the defendant did not request an excess proceeds sale**, the court shall enter judgment:

~~1.~~ **(a)** Foreclosing the right of the defendant to redeem.

~~2.~~ **(b)** Directing the county treasurer to expeditiously execute and deliver to the party in whose favor judgment is entered, including the state, a deed conveying the property described in the certificate of purchase.

**2. If the court finds that the tax lien sale is valid, the tax lien has not been redeemed and the defendant's request for an excess proceeds sale is reasonable, the court shall enter judgment:**

Case: 24-4819, 09/16/2024, DktEntry: 12.1, Page 74 of 80

AZ LEGIS 176 (2024), 2024 Ariz. Legis. Serv. Ch. 176 (S.B. 1431) (WEST)

**(a) Foreclosing the right of the defendant to redeem.**

**(b) Directing the sale of the property pursuant to article 6 of this chapter.**

**(c) Setting the opening bid for the property as the total of the amounts described in subsection B, paragraph 1, subdivisions (a), (b), (c) and (e) of this section and any other reasonable fees as determined by the court.**

**B. A property owner whose right to redeem is being foreclosed may request the court to determine if the sale of the property to recover excess proceeds is reasonable. The court shall determine that the sale of the property for excess proceeds is reasonable if the sale price of the property is likely to be more than $2,500 above the total of the amounts described in paragraph 1 of this subsection. If a request is made for an excess proceeds sale, the following information shall be provided to the court for the purposes of determining if an excess proceeds sale is reasonable:**

**1. The certificate of purchase holder shall provide all of the following:**

**(a) The costs related to filing the claim to foreclose the right to redeem, including estimated attorney fees and costs to be incurred through the date of the excess proceeds sale, if ordered.**

**(b) The amount for which the real property tax lien was sold, with interest at a rate of sixteen percent per annum from the date of the tax lien sale through the date of the excess proceeds sale, if ordered.**

**(c) The amount of any statutory fees the certificate of purchase holder paid in connection with the certificate of purchase, except the processing fee imposed by section 42–18116, subsection C, with interest at a rate of sixteen percent per annum from the date of the tax lien sale through the date of the excess proceeds sale, if ordered.**

**(d) The amount of all other recorded state liens or encumbrances on the state property as indicated on a title report provided by the certificate of purchase holder, including other years in which taxes are delinquent. For the purposes of this subdivision, the certificate of purchase holder does not have to determine the actual balance owed on any lien or encumbrance on the property, except for property taxes owed.**

**(e) The estimated cost of the sale of property pursuant to article 6 of this chapter.**

**(f) Any other evidence relating to the value of the property or objecting to the excess proceeds sale that the certificate of purchase holder deems necessary.**

**2. The property owner whose right to redeem is being foreclosed shall provide a reasonable estimate of the market value of the property.**

~~B.~~ **C.** After entering judgment the parties whose rights to redeem the tax lien are thereby foreclosed have no further legal or equitable right, title or interest in the property subject to the right of appeal and stay of execution as in other civil actions.

~~C.~~ **D.** The foreclosure of the right to redeem does not extinguish any **of the following:**

**1. An** easement on or appurtenant to the property.

~~D. The foreclosure of the right to redeem does not extinguish any~~

Case: 24-4819, 09/16/2024, DktEntry: 12.1, Page 75 of 80

AZ LEGIS 176 (2024), 2024 Ariz. Legis. Serv. Ch. 176 (S.B. 1431) (WEST)

**2. A** lien for an assessment levied pursuant to title 48, chapter 4, 6, 14 or 18, ~~or~~ section 9–276. **For the purposes of this paragraph, assessment does not include an abatement lien imposed under section 9–499.**

**3. If the court finds that the request for an excess proceeds sale is reasonable, the property owner's interest in the excess proceeds from the sale of the property pursuant to article 6 of this chapter.**

Sec. 5. Section 42–18205, Arizona Revised Statutes, is amended to read:

<< AZ ST § 42–18205 >>

### § 42–18205. County treasurer's deed; form

**A.** On receiving a certified copy of a judgment foreclosing the right to redeem **issued pursuant to section 42–18204, subsection A, paragraph 1** and a fee of ~~fifty dollars~~ **$50** per parcel, the county treasurer shall execute and deliver to the party in whose favor the judgment was entered a deed conveying the property described in the judgment.

**B.** The deed shall include the following information:

1. The date, court action number and name of the judgment.

2. The name of the purchaser.

3. The property description.

4. The date of the conveyance.

5. A formal acknowledgment by the treasurer.

Sec. 6. Section 42–18206, Arizona Revised Statutes, is amended to read:

<< AZ ST § 42–18206 >>

### § 42–18206. Redemption during pendency of action to foreclose

Any person who is entitled to redeem under article 4 of this chapter may redeem at any time before judgment is entered, notwithstanding that an action to foreclose has been commenced, but if the person ~~who redeems has been served personally or by publication in the action, or if the person became an owner after the action began and~~ redeems after a notice is recorded pursuant to section 12–1191, judgment shall be entered in favor of the plaintiff against the person for the costs incurred by the plaintiff, including **all of the following:**

**1. The cost of a litigation guarantee or other insured title report.**

**2. The cost of identifying interests of record.**

**3.** Reasonable attorney fees to be determined by the court.

Sec. 7. Title 42, chapter 18, Arizona Revised Statutes, is amended by adding article 6, to read:

T. 42 Ch. 18 Art. 6 pr. § 42–18231

Case: 24-4819, 09/16/2024, DktEntry: 12.1, Page 76 of 80

AZ LEGIS 176 (2024), 2024 Ariz. Legis. Serv. Ch. 176 (S.B. 1431) (WEST)

### Article 6. Sale of property for excess proceeds

<< AZ ST § 42–18231 >>

### § 42–18231. Definition of qualified entity

For the purposes of this article, "qualified entity" means an association or corporation doing business in this state as a bank pursuant to title 6, chapter 2, credit union pursuant to title 6, chapter 4, consumer lender pursuant to title 6, chapter 5, escrow agent pursuant to title 6, chapter 7, insurance company pursuant to title 20, law firm or special master appointed by the court.

<< AZ ST § 42–18232 >>

### § 42–18232. Notice of sale

A. The qualified entity conducting the sale of the property shall provide notice of the time and place of the sale, a description of the property to be sold and the amount of the opening bid by each of the following methods:

1. Recording a notice in the office of the recorder of each county where the property is situated.

2. If the property is reasonably accessible, posting a copy of the notice of sale in a conspicuous place on the property to be sold at least twenty days before the sale. If access to the property is denied because a common entrance to the property is restricted by a limited access gate or similar impediment, the notice shall be posted at that gate or impediment.

3. Posting at one of the places provided for posting public notices at any building that serves as a location of the superior court in the county where the property is to be sold.

4. Publishing the notice of sale in a newspaper of general circulation in the county in which the property to be sold is situated. The notice of sale shall be published at least once a week for four consecutive weeks. The last date of publication may not be less than ten days before the date of sale. The newspaper that publishes the notice shall also post the notice on a website that posts the legal notices of ten or more Arizona newspapers.

5. Sending the notice to the property owners notified pursuant to section 42–18202.

B. The notice of sale shall contain:

1. The date, time and place of the sale. The date, time and place shall be set pursuant to section 42–18233. The date may not be later than the sixtieth day after the date that the notice of sale was recorded.

2. The street address, if any, or identifiable location as well as the legal description of the property.

3. The county assessor's tax parcel number for the property.

4. The amount of the opening bid. The opening bid shall be set pursuant to section 42–18204.

5. The telephone number of the qualified entity conducting the sale.

C. The notice of sale is sufficient if made in substantially the following form:

### Notice of sale for excess proceeds

Case: 24-4819, 09/16/2024, DktEntry: 12.1, Page 77 of 80

AZ LEGIS 176 (2024), 2024 Ariz. Legis. Serv. Ch. 176 (S.B. 1431) (WEST)

**There are unpaid taxes on the property located at (underline)address(underline) that you may own or have a legal interest in or that may be contiguous to your property. The property will be sold at public auction at (underline)specific place of sale(underline) on (underline)date and time(underline) and that sale will be final unless the outstanding taxes are paid. The opening bid at the public auction is (underline)opening bid amount(underline).**

**To make payment or to receive further information, contact the (underline)county(underline) county treasurer immediately at (underline)address(underline) or (underline)telephone number(underline) or the (underline)qualified entity(underline) at (underline)address(underline) or (underline)telephone number(underline).**

**_____(date)_____**

**_____(acknowledgment)_____**

**Legal description of property to be sold:**

**(Street address, if any, or identifiable**

**Location of property)**

**(Legal description of property)**

**(Tax parcel number)**

**D. Any error or omission in the information required by subsection B or C of this section, other than an error in the legal description of the property or an error in the date, time or place of sale, does not invalidate the sale. Any error in the legal description of the property does not invalidate the sale if, considered as a whole, the information provided is sufficient to identify the property being sold. If there is an error or omission in the legal description so that the property cannot be identified, or if there is an error in the date, time or place of sale, the qualified entity shall record a cancellation of notice of sale. The qualified entity or any person furnishing information to the qualified entity is not subject to liability for any error or omission in the information required by subsection B or C of this section except for the wilful and intentional failure to provide such information.**

**E. The notice of sale for excess proceeds may not be rerecorded for any reason. This subsection does not prohibit the recording of a new or subsequent notice of sale regarding the same property.**

<< AZ ST § 42–18233 >>

**§ 42–18233. Date and time of sale**

**The sale shall be held:**

**1. Not later than sixty days after the date of a judgment entered pursuant to section 42–18204, subsection A, paragraph 2.**

**2. On a day other than a Saturday, Sunday or legal holiday.**

**3. Between 9:00 a.m. and 5:00 p.m. mountain standard time.**

**4. At a specified place on the property, at a specified place at any building that serves as a location of the superior court or at a specified place at a place of business of the qualified entity conducting the sale, in any county in which the property to be sold is situated.**

ADDENDUM 00015

Case: 24-4819, 09/16/2024, DktEntry: 12.1, Page 78 of 80

AZ LEGIS 176 (2024), 2024 Ariz. Legis. Serv. Ch. 176 (S.B. 1431) (WEST)

<< AZ ST § 42–18234 >>

**§ 42–18234. Sale by public auction; bidder requirements; postponement of sale**

**A. On the date and at the time and place designated in the notice of sale, the qualified entity shall offer to sell the property at public auction for cash to the highest bidder. The minimum bid shall be the total of the amounts described in section 42–18204, subsection B, paragraph 1. The qualified entity may schedule more than one sale for the same date, time and place.**

**B. Any person, including the qualified entity or the certificate of purchase holder, may bid at the sale. Only the certificate of purchase holder may make a credit bid in lieu of cash at the sale. The qualified entity shall require every bidder, except the certificate of purchase holder, to provide a nonrefundable deposit in an amount equal to ten percent of the opening bid or $2,500, whichever is greater, in any form that is satisfactory to the qualified entity as a condition of entering a bid.**

**C. The qualified entity or the qualified entity's auctioneer may control the means and manner of the auction, except the opening bid shall be an amount equal to the total of the amounts described in section 42–18204, subsection B, paragraph 1. Every bid shall be deemed an irrevocable offer until the sale is completed, except that a subsequent bid by the same bidder for a higher amount shall cancel that bidder's lower bid. The qualified entity shall return deposits to all but the bidder whose bid resulted in the highest bid price. The sale is deemed completed on payment by the purchaser of the price bid in a form satisfactory to the qualified entity.**

**D. The subsequent execution, delivery and recording of the qualified entity's deed as prescribed by section 42–18235 are ministerial acts. If the qualified entity's deed is recorded in the county in which the property is located within fifteen business days after the date of the sale, the sale is deemed perfected at the appointed date and time of the sale.**

**E. The qualified entity may postpone or continue the sale from time to time or change the place of the sale to any other location authorized pursuant to this chapter by giving notice of the new date, time and place by public declaration at the time and place last appointed for the sale. Any new sale date shall be a fixed date within sixty calendar days after the date of the declaration. After a sale has been postponed or continued, the qualified entity, on request, shall make available the date and time of the next scheduled sale and, if the location of the sale has been changed, the new location of the sale until the sale has been conducted or canceled and providing this information shall be without obligation or liability for the accuracy or completeness of the information. Other notice of the postponed, continued or relocated sale is not required.**

**F. A sale is postponed by operation of law to the next business day at the same scheduled time and place if an act of force majeure prevents access to the sale location for the conduct of the sale.**

**G. Except for the assessments provided in section 42–18204, subsection D and property tax liens on the property, a sale concluded under this article extinguishes any other liens and encumbrances held by this state on the property, whether satisfied or not from the proceeds of the sale. To the extent not satisfied from the proceeds of the sale, liens and encumbrances held by this state as to the taxpayer and the taxpayer's other property are not affected.**

<< AZ ST § 42–18235 >>

**§ 42–18235. Payment of bid; qualified entity's deed**

**A. The highest bidder at the sale, other than the judgment holder to the extent of the credit bid, shall pay the price bid by not later than 5:00 p.m. mountain standard time of the day after the sale, other than a Saturday, Sunday or legal holiday. If the highest bidder fails to pay the amount bid for the property struck off to the bidder at the sale, the qualified entity, in the qualified entity's sole discretion, shall either continue the sale to reopen bidding or immediately offer the property to the second highest bidder who may purchase the property at that bidder's bid price. The deposit of the highest bidder**

Case: 24-4819, 09/16/2024, DktEntry: 12.1, Page 79 of 80

AZ LEGIS 176 (2024), 2024 Ariz. Legis. Serv. Ch. 176 (S.B. 1431) (WEST)

who fails to pay the amount bid shall be applied to the costs of facilitating the sale and the balance, if any, and treated as additional sale proceeds to be distributed pursuant to section 42–18236, subsection A. If the second highest bidder does not pay that bidder's bid price by 5:00 p.m. mountain standard time of the next day, excluding Saturdays, Sundays and legal holidays after the qualified entity offers the property to that bidder, the qualified entity shall either continue the sale to reopen bidding or offer the property to each of the prior bidders on successive days excluding Saturdays, Sundays and legal holidays in order of their highest bid, until a bid price is paid, or if there is no other bidder, the sale shall be deemed to be continued to a time and place designated by the qualified entity, or if not designated, the sale shall be continued to the same place and at the same time twenty-eight days after the last scheduled sale date. If the twenty-eighth day is a Saturday, Sunday or legal holiday, the sale shall be continued to the next business day. If the sale is continued, the qualified entity shall provide notice of the continuation of the sale by registered or certified mail, with postage prepaid, to all bidders who provide their names, addresses and telephone numbers in writing to the qualified entity. In addition to the forfeit of deposit, a highest bidder who fails to pay the amount bid by that bidder is liable to any person who suffers loss or expenses as a result, including attorney fees. In any subsequent sale of property, the qualified entity may refuse to accept any bid of that person. In any sale that is continued pursuant to this subsection, the qualified entity shall reject a bid from any previous bidder who elected not to pay that bidder's bid price.

B. The price bid shall be paid at the office of the qualified entity or the qualified entity's agent, or any other reasonable place designated by the qualified entity. The payment of the bid price may be made at a later time if agreed on in writing by the qualified entity. Within seven business days after receipt of payment by the qualified entity or the qualified entity's agent, made in a form that is satisfactory to the qualified entity, the qualified entity shall execute and submit the qualified entity's deed to the county recorder for recording and, on request, shall provide an unrecorded copy of the signed qualified entity's deed to the purchaser. The recording of the qualified entity's deed on sale constitutes delivery of the deed to the purchaser. The qualified entity is not liable for any damages resulting from the failure to record the deed on sale after physical delivery of the deed to the purchaser. The deed shall include the following information:

1. The date, court action number and name of the judgment ordering the sale of the property.

2. The name of the purchaser.

3. The property description.

4. The date of the conveyance.

5. A formal acknowledgment by the qualified entity.

C. All persons to whom the qualified entity mails a notice of a sale pursuant to section 42–18232 shall waive all defenses and objections to the sale not raised in an action that results in an injunction before the scheduled date of the sale. A copy of the injunction shall be delivered to the qualified entity within twenty-four hours after the order is entered.

D. A sale is not complete if the sale violates subsection C of this section because of an undisclosed order entered by the court within the time provided for in subsection C of this section. A sale held in violation of subsection C of this section shall be continued to a date, time and place announced by the qualified entity at the sale and shall comply with section 42–18234. If not announced, the sale shall be continued to the same place and at the same time twenty-eight days later. If the twenty-eighth day falls on a Saturday, Sunday or legal holiday, the sale shall be continued to the next business day.

E. The deed conveyed pursuant to this section shall operate to convey to the purchaser title of the purchased property. That conveyance shall be absolute without right of redemption and clear of all subordinate liens, claims or interests.

Case: 24-4819, 09/16/2024, DktEntry: 12.1, Page 80 of 80

AZ LEGIS 176 (2024), 2024 Ariz. Legis. Serv. Ch. 176 (S.B. 1431) (WEST)

<< AZ ST § 42–18236 >>

### § 42–18236. Disposition of proceeds of sale

**A. The qualified entity shall distribute the proceeds of the sale as follows:**

**1. To the qualified entity, an amount equal to the cost of facilitating the sale of the property, including the costs of providing the notice required by section 42–18232, subsection A.**

**2. To the certificate of purchase holder, an amount equal to the amounts provided in section 42–18204, subsection B, paragraph 1, subdivisions (a), (b) and (c).**

**3. To the county treasurer to redeem any other property tax liens on the parcel and pay current taxes due, then other state lien and encumbrance holders, an amount equal to their respective lien or encumbrance as indicated on a title report provided by the certificate of purchase holder and provided to the court pursuant to section 42–18204, subsection B, paragraph 1, subdivision (d), adjusted by any lien or encumbrance amount that has been paid or increased due to delinquencies since the title report was provided to the court.**

**4. To the property owner whose right to redeem was foreclosed, any remaining proceeds of the sale. The property owner is not required to be present at the excess proceeds sale in order to receive the property owner's distribution of proceeds from the sale under this subsection.**

**B. The qualified entity shall distribute the proceeds of the sale pursuant to subsection A of this section within ninety days after the sale of the property and notify the court that the distributions have been made. The qualified entity shall dispose of any monies unclaimed after ninety days pursuant to title 44, chapter 3. If the qualified entity fails to comply with this subsection, the qualified entity shall pay interest at the rate provided for judgments pursuant to section 44–1201 from the date of completion of the sale until the qualified entity complies with this subsection. Any party in the action to foreclose the right to redeem relating to the property may commence a civil action against the qualified entity for the qualified entity's failure to comply with this subsection. The court may award the prevailing party its reasonable attorney fees and costs incurred in that civil action.**

<< Note: AZ ST §§ 12–1551, 42–18152, 42–18202, 42–18204, 42–18205, 42–18206 >>

<< Note: AZ ST §§ 42–18231, 42–18232, 42–18233, 42–18234, 42–18235, 42–18236 >>

**Sec. 8. Applicability**

This act applies to actions to foreclose the right to redeem filed pursuant to title 42, chapter 18, article 5, Arizona Revised Statutes, from and after the effective date of this act.

Approved by the Governor, April 23, 2024.
Filed in the Office of the Secretary of State, April 23, 2024.

© 2024 Thomson Reuters. No claim to original U.S. Government Works.