No. 24-4819

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

Christine M. Searle

*Plaintiff-Appellant*,

v.

John M. Allen, et al.,

*Defendant-Appellees*.

On Appeal from the United States District Court for the District of Arizona

Civil Case No. 24-CV-00025-JJT, The Honorable John J. Tuchi

## Appellant's Reply Brief

William E. Trachman
Grady J. Block
Mountain States
Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Tele: (303) 292-2021
wtrachman@mslegal.org

Veronica Lucero
Davillier Law Group LLC
4105 N. 20th St., Ste. 110
Phoenix, AZ 85016
Tele: (602) 730-2985 ext. 705
Fax: (602) 801-2539
vlucero@davillierlawgroup.com

*Attorneys for Appellant Christine M. Searle*

# Table of Contents

**Page**

Table of Contents .................................................................... i

Table of Authorities ............................................................... iii

Introduction .......................................................................... 1

I.  No Party Disputes This Court's Jurisdiction. ................................ 3

II.  No Party Disputes That This Court's Review is *De Novo*, or That the *Rooker-Feldman* Doctrine is "Narrowly" Applied in the Ninth Circuit. ........................................................................... 3

III.  The Standard of Review Regarding the Appellees' Brand New Mootness Defense Favors Ms. Searle. ........................................ 5

IV.  At a Minimum, Appellees Fail to Establish That Ms. Searle's Claims Involving Surplus Equity Are Barred by the *Rooker-Feldman* doctrine. ............................................................ 8

    a.  Ms. Searle's Section 1983 Claim for Surplus Equity under *Tyler* is fully viable............................................................. 9

    b.  Ms. Searle's Claim That the Private Appellees Have Been Unjustly Enriched Is Not Barred by the *Rooker-Feldman* Doctrine. ............................................................................ 18

    c.  Ms. Searle's Claim That She Has Suffered an Excessive Fine at the Hands of Appellees Is Not Barred by the *Rooker-Feldman* Doctrine. ............................................................................ 19

V.  Ms. Searle's Claim for a Private-Use Taking is Not Barred By the *Rooker-Feldman* doctrine, (1) Because it is an Independent Claim for Relief; and/or (2) if the Court Accepts the "Reasonable Opportunity" Doctrine. ................................................................ 20

a. Ms. Searle's Private-Use Takings Claim is Not an Attack on the State Court Judgment, and is Thus Not a De Facto Appeal.................................................................................... 22

b. The *Rooker-Feldman* doctrine is designed to protect federal courts from becoming appellate courts over state law cases; not stop plaintiffs from raising arguments that were not available to them previously. .............................................. 24

VI. At a Minimum, Ms. Searle's Request for Declaratory Relief May Still Proceed.................................................................................... 26

a. Ms. Searle is at least entitled to a declaration that Arizona law effected a Taking and Imposed an Excessive Fine. .... 27

b. Ms. Searle's Request for Declaratory Relief Is Not Moot, and In Any Event, the Voluntary Cessation Doctrine Applies.................................................................................... 29

i. Ms. Searle's claims for declaratory relief are not moot because the Court could issue an Order with real-world effect. .............................................................. 29

ii. Ms. Searle's claims for declaratory relief are viable regardless of the mootness doctrine, because the voluntary cessation doctrine applies......................... 30

VII. Appellees' efforts to point fingers at each other are unpersuasive. 32

Conclusion ............................................................................................ 34

Statement of Related Cases Pursuant to Circuit Rule 28-2.6 ................ 35

Certificate of Compliance for Briefs........................................................ 36

Certificate of Service for Electronic Filing............................................. 37

# Table of Authorities

**<u>Cases</u>**                                                                  **<u>Page(s)</u>**

*Adarand Constructors, Inc. v. Slater*,
   528 U.S. 216 (2000) ................................................................. 7

*Allison v. State Farm Mut. Auto. Ins. Co.*,
   266 Fed. Appx. 627 (9th Cir. 2008)....................................... 25

*Automatic Art, LLC v. Maricopa County*,
   2010 WL 11515708 (D. Ariz. 2010)...................................... 25

*Behr v. Campbell*,
   8 F.4th 1206 (11th Cir. 2021) ................................................. 4

*Belinda K. v. Cnty. of Alameda*,
   2011 WL 2690356 (N.D. Cal. 2011) .................................... 14

*Bell v. City of Boise*,
   709 F.3d 890 (9th Cir. 2013)............................................. 4, 23

*Berens v. United States*,
   92 Fed. Cl. 737 (Ct. Fed. Claims 2010) ........................... 10, 11

*Bianchi v. Rylaarsdam*,
   334 F.3d 895 (9th Cir. 2003)................................................ 14

*Bilbrey v. Brown*,
   738 F.2d 1462 (9th Cir. 1984)............................................... 28

*Brown v. Duringer Law Group PLC*,
   86 F.4th 1251 (9th Cir. 2023) ................................................. 4

*Chafin v. Chafin*,
   568 U.S. 165 (2013) .......................................................... 7, 29

*Chudacoff v. University Medical Center of Southern Nevada*,
   649 F.3d 1143 (2011)............................................................ 13

*Cogan v. Trabucco*,
   114 F.4th 1054 (9th Cir. 2024) ........................................ 26, 30

*Coleman v. District of Columbia*,
    70 F. Supp.3d 58 (D.D.C. 2014) ............................................................. 11

*Dorce v. City of New York*,
    2 F.4th 82 (2d Cir. 2021)........................................................................ 9, 12

*Dorce v. City of New York*,
    608 F.Supp.3d 118 (S.D.N.Y. 2022).......................................................... 20

*Equal Emp't Opportunity Comm'n v. CollegeAmerica Denver, Inc.*,
    869 F.3d 1171 (10th Cir. 2017)................................................................. 30

*Fikre v. Federal Bureau of Investigation*,
    904 F.3d 1033 (9th Cir. 2018).................................................................... 8

*Finstuen v. Crutcher*,
    496 F.3d 1139 (10th Cir. 2007)................................................................. 31

*Freed v. Thomas*,
    976 F.3d 729 (6th Cir. 2020)..................................................................... 11

*Garry v. Geils*,
    82 F.3d 1362 (7th Cir. 1996)..................................................................... 13

*Hall v. Meisner*,
    51 F.4th 185 (6th Cir. 2022) ..................................................................... 11

*Henrichs v. Valley View Development*,
    474 F.3d 609 (2007) ................................................................................. 23

*Hoblock v. Albany Cnty. Bd. Of Elections*,
    422 F.3d 77 (2d Cir. 2005)........................................................................ 23

*Knick v. Twnship. of Scott*,
    588 U.S. 180 (2019) ................................................... 2, 16, 17, 18, 34

*Kougasian v. TMSL, Inc.*,
    359 F.3d 1136 (9th Cir. 2004)................................................................. 3, 22

*Lance v. Dennis*,
    546 U.S. 459 (2006) ................................................................................. 22

*Los Angeles Cnty. v. Davis*,
440 U.S. 625 (1979) ............................................................... 8

*Manufactured Home Communities Inc. v. City of San Jose*,
420 F.3d 1022 (9th Cir. 2005) ................................................ 22

*Marshall v. Washington State Bar Ass'n*,
2012 WL 1884680 (W.D. Wash. 2012) ................................. 26

*Merritts v. Richards*,
62 F.4th 764 (3rd Cir. 2023) ................................................. 12

*Noel v. Hall*,
341 F.3d 1148 (9th Cir. 2003) ............................................... 4

*Pakdel v. City and Cnty. of San Francisco, CA*,
594 U.S. 474 (2021) ............................................................. 17

*Powell v. McCormack*,
395 U.S. 486 (1969) ............................................................. 28

*Rooker v. Fidelity Trust Co.*,
263 U.S. 413 (1923) ....................................................... 13, 24

*Rose v. Oakland Cnty., Mich. Treasurer*,
2023 WL 2823972 (6th Cir. 2023) ........................................ 15

*Seattle Audubon Soc. v. Moseley*,
80 F.3d 1401 (9th Cir. 1996) ................................................ 28

*Sharritt v. Henry*, No. 23 C,
2024 WL 4524501 (N.D. Ill. 2024) ................................. 15, 33

*Skinner v. Switzer*,
562 U.S. 521 (2011) ............................................................. 27

*Strizheus v. City of Sioux Falls, S.D.*,
664 F.Supp.3d 937 (D.S.D. 2023) ........................................ 20

*Summers v. Tice*,
33 Cal.2d 80 (1948) ............................................................. 33

*Timbs v. Indiana*,
    586 U.S. 146 (2019) .................................................................. 20

*Traylor v. Pacciuco*, LLC,
    2024 WL 839523 (D. Conn. 2024) ...................................... 16

*Traylor v. Town of Waterford*,
    2024 WL 4615599 (2d Cir. 2024)........................................ 15

*Tyler v. Hennepin Cnty.*,
    505 F.Supp.3d 879 (D. Minn. 2020) .................................. 1, 16

*Tyler v. Hennepin Cnty.*,
    598 U.S. 631 (2023) ............................... 1, 14, 16, 20, 25, 32

*U.S. Bank Trust National Association v. Walworth Cnty.*, WI,
    2023 WL 5344345 (7th Cir. 2023)........................................ 10

*United States v. Lawton*,
    110 U.S. 146 (1884) ............................................................ 11

*West Virginia v. Environmental Protection Agency*,
    142 S. Ct. 2587 (2022) ........................................................ 7

*Western Nuclear, Inc. v. Huffman*,
    825 F.2d 1430 (10th Cir. 1987)............................................ 31

*WWC Holding Co., Inc. v. Sopkin*,
    488 F.3d 1262 (10th Cir. 2007)............................................ 31

**Statutes**

28 U.S.C. § 1291 .................................................................... 3

42 U.S.C. § 1983 .................................................................... 5, 17

A.R.S. § 42-18101 .................................................................. 6

A.R.S. § 42-18205(A) ............................................................ 18

A.R.S. § 42-18204(B) ............................................................ 27

A.R.S. tit. 42, Ch. 1 ............................................................... 5

## <u>Other Authorities</u>

13A Charles A. Wright et al., Federal Practice and Procedure § 3533.1     31

## Introduction

Appellees essentially contend that *Tyler v. Hennepin Cnty.*, 598 U.S. 631 (2023), was wrongly decided. In their estimation, nine Justices of the Supreme Court, the attorneys for the Respondent in that matter, and countless amici who filed briefs in support of the Respondent, missed the obvious jurisdictional defect in the case—that the Court was apparently barred by the *Rooker-Feldman* doctrine from hearing a post-foreclosure Takings claim against a local government for surplus equity. *See Tyler v. Hennepin Cnty.*, 505 F.Supp.3d 879, 883 (D. Minn. 2020) ("[E]ach parcel with an unsatisfied judgment is sold to the state through a procedure by which the county (acting on behalf of the state) 'bids in' (i.e., purchases the property for) the amount of delinquent taxes, penalties, costs, and interest.") (emphasis added). That is quite an argument.

Give Appellees credit for embracing it though. Maricopa County and John Allen (Maricopa) say that from now on, only state courts can hear Takings arguments based on *Tyler*, where a foreclosure action deprives an owner of all property rights under state law. Arapaho LLC and American Pride LLC (the Private Appellees), for their part, contend that a federal case is viable only if pursued before the judgment in the state case occurs—whether by immediately removing the state court foreclosure action or by filing a separate federal case. But adopting either of these views would short-circuit Section 1983, and effectively limit federal

jurisdiction in a way that directly undermines the protections that Tyler sought to guarantee for property owners.

Besides the deep tension with *Tyler*, Appellees also run head-first into other binding precedent: the Supreme Court's clear admonition that plaintiffs have a right to bring their Takings claims under Section 1983 in federal court. *See Knick v. Twnship. of Scott*, 588 U.S. 180, 185 (2019) ("The Civil Rights Act of 1871, after all, guarantees a federal forum for claims of unconstitutional treatment at the hands of state officials….") (cleaned up); *id.* at 204 (rejecting the "San Remo Trap" where "[t]he upshot is that many takings plaintiffs never have the opportunity to litigate in a federal forum that § 1983 by its terms seems to provide."). No Appellee offers any authority for the proposition that Knick contains an implicit *Rooker-Feldman* exception.

Put simply, Appellees worked together to deprive Christine Searle of her home and its value, well above the $1,607.68 that she owed in taxes. That is fundamentally what Ms. Searle challenges here—not the state court which merely correctly applied state law. For all of the citations to lower-court *Rooker-Feldman* cases in their briefs, Appellees never fully grapple with that fact, or with the Supreme Court authorities cited above. But given these binding precedents, the best course is to reverse the District Court, and permit Ms. Searle's claims to have their day in court.

## I.     No Party Disputes This Court's Jurisdiction.

In the Opening Brief, Ms. Searle noted that this Court has jurisdiction over the appeal under 28 U.S.C. § 1291. Appellees Arapaho LLC and American Pride LLC (the Private Appellees) "concede that this Court has jurisdiction to hear this appeal." *See* Private Appellees Answering Brief (PAAB), at 1. Maricopa "join[s] in and incorporate[s] by reference" the arguments in the Private Appellees Answering Brief. *See* Maricopa Answering Brief (MAB), at 1. Because there is no jurisdictional statement in Maricopa's Answering Brief, Ms. Searle interprets Maricopa to concede this Court's jurisdiction, as the Private Appellees do.[1]

## II.     No Party Disputes That This Court's Review is *De Novo*, or That the *Rooker-Feldman* Doctrine is "Narrowly" Applied in the Ninth Circuit.

In the Opening Brief, Ms. Searle noted that this Court reviews *de novo* a district court's dismissal of a complaint for lack of subject matter jurisdiction. Maricopa acknowledges the same. *See* MAB, at 5. The Private Appellees Answering Brief does not contain a "Standard of Review" section, and Ms. Searle interprets the omission as a concession that the Private Appellees agree that that the relevant standard of review is *de novo*. *See also Kougasian v. TMSL, Inc.*, 359 F.3d 1136,

---

[1] Private Appellees state that they concede jurisdiction "[w]ith one exception." *See* PAAB, at 1. Ms. Searle interprets this language to refer to the *Rooker-Feldman* doctrine itself, which is of course the subject of the appeal.

1139 (9th Cir. 2004) ("We review de novo a district court's dismissal under *Rooker–Feldman*.").

Additionally, no party contests that the *Rooker-Feldman* doctrine "occupies narrow ground and applies only in limited circumstances." *Brown v. Duringer Law Group PLC*, 86 F.4th 1251, 1253 (9th Cir. 2023) (internal quotation marks omitted); *cf. Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021) ("[D]istrict courts should keep one thing in mind when *Rooker-Feldman* is raised: it will almost never apply."). And Ninth Circuit case law is clear that *Rooker-Feldman* applies only where a party alleges a legal error by the state court. *See Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013) ("Thus, even if a plaintiff seeks relief from a state court judgment, such a suit is a forbidden de facto appeal only if the plaintiff also alleges a legal error by the state court."). Under that standard, unless a defendant first establishes that a plaintiff is bringing a de facto appeal, there is no need to reach an inquiry into whether a claim is "inextricably intertwined" with a state court judgment. *See Noel v. Hall*, 341 F.3d 1148, 1165 (9th Cir. 2003) ("The 'inextricably intertwined' analysis of *Feldman* applies to defeat federal district court subject matter jurisdiction only when a plaintiff's suit in federal district court is at least in part a forbidden de facto appeal of a state court judgment.") (emphasis added).

Maricopa also acknowledges that the allegations in the complaint are to be construed in the light most favorable to the non-moving party. *See* MAB, at 5. Ms.

Searle agrees. Here, Ms. Searle is entitled to all reasonable inferences that can be drawn from her Complaint (and not the Appellees' attempt to uncharitably read her pleadings).

## III. The Standard of Review Regarding the Appellees' Brand New Mootness Defense Favors Ms. Searle.

Ms. Searle's operative complaint seeks declaratory and injunctive relief regarding Arizona state law. 2-ER-107 ("Ms. Searle also seeks declaratory and injunctive relief in that the Arizona state law tax scheme is unconstitutional."); 2-ER-145 ("Plaintiff Christine M. Searle respectfully requests that this Court … Find and declare that relevant provisions of Title 42, Chapter 18 of the Arizona Revised Statutes are unconstitutional under the United States and Arizona Constitutions…").

Before the District Court, Ms. Searle repeatedly maintained that her suit for declaratory relief was not barred by the *Rooker-Feldman* doctrine. *See* 2-ER-054 ("Under the well-established principle of *Ex Parte Young*, a public official who enforces state law may be named as a defendant in order to obtain prospective relief under 42 U.S.C. § 1983."); 2-ER-220 ("Under Defendants' theory, no plaintiff with Article III standing could ever bring a takings or excessive fines challenge in federal court in this context, even if a plaintiff's claims were based entirely on post-sale conduct.").

As the parties agree, a change to Arizona law was enacted on April 23, 2024, specifically in response to the Supreme Court's decision in *Tyler*. Ms. Searle even

filed a Notice of Supplemental Authority alerting the District Court to this change. 2-ER-064. The Private Appellees filed a response, never once referring to the doctrine of mootness. SER-002. Additionally, when Ms. Searle filed her Second Amended Complaint on April 24, 2024, she specifically noted the change in the law. 2-ER-103, n.2 ("At the time of filing this Second Amended Complaint, a bill has been signed by the Arizona Governor Katie Hobbs changing this regime. However, the bill does not protect Ms. Searle, as it is not retroactive.").

Maricopa thereafter moved to dismiss, but like the Private Appellees, never mentioned mootness. Ms. Searle even noted that fact. 2-ER-036 ("Nor does the County assert any brand of mootness with respect to the change in Arizona's state law."). And the Private Appellees have never moved to dismiss Ms. Searle's operative complaint, on either mootness or any other grounds. *See* Op. Br., at 43 ("Appellees Arapaho and American Pride had moved to dismiss the previously-filed Amended Complaint, which had been superseded.").

On appeal, and for the first time, both sets of Appellees now allege that Ms. Searle's request for declaratory relief regarding the invalidity of Arizona Revised Statutes ("A.R.S.") § 42-18101 to -18236 is moot, since Arizona has amended the law under which her home was taken. For instance, the Private Appellees argue that the change in Arizona law—enacted on April 23, 2024, and effective on September 14, 2024—moots the dispute over the underlying constitutionality of the prior

statute. *See* PAAB, at 30-32. Maricopa reiterates these arguments in the closing paragraph of its Answering Brief. *See* MAB, at 15.

In any event, Appellees must meet the high standard of review to either (1) establish mootness, or (2) to avoid the voluntary cessation exception to the mootness doctrine. *See West Virginia v. Environmental Protection Agency*, 142 S. Ct. 2587, 2607 (2022) ("That burden is 'heavy' where, as here, the only conceivable basis for a finding of mootness in the case is the respondent's voluntary conduct.") (internal brackets and quotation marks omitted); *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 224 (2000) ("It is no small matter to deprive a litigant of the rewards of its efforts … Such action on grounds of mootness would be justified only if it were <u>absolutely clear</u> that the litigant no longer had any need of the judicial protection that it sought.") (emphasis added) (emphasis added).

With respect to mootness, courts will reject arguments that a case is moot when a ruling in the plaintiff's favor could create any real-world relief whatsoever. "[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks omitted). By contrast, "[a]s long as the parties have a concrete interest, *however small*, in the outcome of the litigation, the case is not moot." *Id.* at 172 (emphasis added).

And even where mootness is established, courts recognize an exception to the doctrine where the defendant itself voluntarily ceases its conduct. In such cases, even a moot case remains viable under Article III unless the defendant affirmatively establishes that the change in law "completely and irrevocably eradicated the effects of the alleged violation." *See Fikre v. Federal Bureau of Investigation*, 904 F.3d 1033, 1037 (9th Cir. 2018) ("[A] defendant's voluntary cessation does not moot a case unless (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have <u>completely and irrevocably eradicated</u> the effects of the alleged violation.") (emphasis added and internal quotation marks omitted); *see also Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979) ("When <u>both</u> conditions are satisfied it may be said that the case is moot….") (emphasis added). Here, no Appellee has even asserted that the injury to Ms. Searle has been completely and irrevocably eradicated.

## IV. At a Minimum, Appellees Fail to Establish That Ms. Searle's Claims Involving Surplus Equity Are Barred by the *Rooker-Feldman* doctrine.

Ms. Searle has never contended that the state court made any error of law or reached a decision contrary to the federal Constitution. The fact that a state court judgment was entered before Maricopa (which was not even a party in the state court foreclosure action) transferred the deed of Ms. Searle's home to the Private Appellees does not effectively launder the transaction, such that Ms. Searle has no right to seek relief in federal court for Appellees' conduct. That is most evident in

the context of her claims related to the surplus equity in her home, now possessed by the Private Appellees.

### a. Ms. Searle's Section 1983 Claim for Surplus Equity under *Tyler* is fully viable.

No Appellee cites any post-*Tyler* case holding that an action to recover surplus equity—which necessarily occurs after a property owner has been foreclosed upon and lost the right to their home—is barred by the *Rooker-Feldman* doctrine. That is because the District Court stands alone in that regard. Again and again, courts have rejected that holding, even before *Tyler* was issued.

In the Opening Brief, Ms. Searle first cited *Dorce v. City of New York*, 2 F.4th 82 (2d Cir. 2021), a pre-*Tyler* case that rejected an assertion of a *Rooker-Feldman* defense in the context of a claim for excess value. *See* Op. Br. at 15. Both the District Court and the Private Appellees have tried to distinguish the case, but to no avail. Indeed, the best argument that they can muster is that New York State law and Arizona law differed slightly, such that in *Dorce* the property owner technically still had some intrinsic property right before the final sale occurred. But this argument doesn't work. *Dorce* in fact distinguished, on one hand, an effort to undo a foreclosure judgment by obtaining the property back, and on the other hand, the right to merely seek the dollars held by the defendant in excess of their entitlement. It did not rely on the technicalities of timing. And *Tyler* itself rejects the idea that states or courts may rely on rigid understandings of property rights under state laws.

Next, Ms. Searle cited *Berens v. United States*, 92 Fed. Cl. 737 (Ct. Fed. Claims 2010). *See* Op. Br. at 16. That case involved a Takings claim that was brought against the United States after a quiet title action was resolved in state court. *Id.* at 749 ("[T]he plaintiffs … present a constitutionally based claim that the United States has taken their property rights for which they are entitled to just compensation under the Fifth Amendment, based on the same issue as to the nature of the … interest in the right of way."). The court rejected any application of the *Rooker-Feldman* doctrine because the Takings action did "not challenge the finality of the decision in the Washington state courts with respect to the … quiet title action." *Id.* at 749. The Private Appellees respond only that the case didn't involve tax liens foreclosed by private actors. But that is hardly a distinction that matters. Instead, the key in *Berens* was that, like here, the underlying state court judgment was not being contested.

Ms. Searle next cited *U.S. Bank Trust National Association v. Walworth Cnty.*, WI, 2023 WL 5344345 (7th Cir. 2023). *See* Op. 16, n.1. In that case, the Seventh Circuit had initially asked the parties to brief whether the *Rooker-Feldman* doctrine applied to the case before it, which involved a claim for surplus equity. But after *Tyler*, the Seventh Circuit remanded the matter for *de novo* reconsideration, in light of *Tyler*. In other words, the Seventh Circuit implicitly rejected the idea that it lacked subject matter jurisdiction altogether, due to *Rooker-Feldman*. No Appellee offered any response to *U.S. Bank Trust National Association* in their Answer Briefs.

Next, Ms. Searle referred to *Coleman v. District of Columbia*, 70 F. Supp.3d 58 (D.D.C. 2014), where the court allowed a Takings claim to proceed for surplus equity, rejecting a *Rooker-Feldman* defense. *Id.* at 77 ("Mr. Coleman's claim for compensation for the taking of his surplus equity in the property survives *Rooker–Feldman* because he does not challenge the Foreclosure Judgment, but the District's allegedly unconstitutional enforcement of the statute providing for a taking of his surplus equity."). Appellees have no answer to *Coleman*, other than to say that in a stray sentence, it described a different case—*United States v. Lawton*, 110 U.S. 146 (1884)—as recognizing the ability of state actors to enact statutes to protect surplus equity. But that sentence had nothing to do with the court's decision on the *Rooker-Feldman* doctrine. Instead, it went to the viability of the underlying Takings claim itself. Rather, like *Dorce*, the court drew a distinction between trying to get property back, and trying to obtain just compensation for a deprivation of property rights.

Ms. Searle also referred to *Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022) and *Freed v. Thomas*, 976 F.3d 729, 737 (6th Cir. 2020). *See* Op. Br. at 17. Both are Sixth Circuit cases holding that just compensation claims can proceed in cases where absolute title vested with an entity other than the plaintiff. The Private Appellees argue that neither case technically involved a *Rooker-Feldman* analysis—but now we are really stacking up cases where apparently all of the parties and judges missed the obvious supposed jurisdictional defects in the plaintiffs' claims.

Next, Ms. Searle cited *Merritts v. Richards*, 62 F.4th 764 (3rd Cir. 2023), as another matter where the court rejected the assertion of a *Rooker-Feldman* defense in the context of a claim for just compensation. *See* Op. Br. at 17-18. Appellees argue that the case is distinguishable because it involved condemnation, not a tax lien, and a governmental entity, not a private investor. But once again, they fail to identify any doctrinal reason why these differences actually affect this Court's analysis. Indeed, *Merritts* provides the clearest statement of why actions for just compensation under the Takings Clause aren't barred by *Rooker-Feldman*: "[B]ecause the obligation to provide such compensation arises upon a taking, these claims actually depend on the <u>correctness</u> of the judgment in the condemnation action." *Id.* at 775-76 (original emphasis).[2]

The Private Appellees also try to distinguish several precedents on the basis that they didn't involve a private investor, as if that made a difference doctrinally. But the onus is on Appellees to establish why courts should affirmatively care that a private entity currently possesses Ms. Searle's home. None of Appellees' cases suggest that a plaintiff who would otherwise have a viable Takings claim under *Tyler* nevertheless loses that claim if the state actor transfers the property to a third-party.

---

[2] The Private Appellees contend that the plaintiff in *Merritts* was actually a "state court loser." But that is a misreading of the case, with respect to the just compensation claims at issue: "But Merritts is <u>not</u> a state-court loser with respect to his just-compensation and conspiracy-to-deny-just-compensation claims." *Id.* at 776 (emphasis added).

*See Chudacoff v. University Medical Center of Southern Nevada*, 649 F.3d 1143, 1150 (2011) ("Even conduct of a private individual constitutes state action when there is a such a close nexus between the State and the challenged action that the individual's conduct may be fairly treated as that of the State itself…") (internal quotation marks omitted). Nor is it clear why such a difference would be relevant in the context of a *Rooker-Feldman* analysis.

Notably, neither the Private Appellees nor Maricopa ever cite to the Supreme Court's decision in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), itself. *See* MAB, at ii (Table of Contents); PAAB, at vi (Table of Contents). Instead, they rely most prominently on snippets from other cases that purport to describe the effects of *Rooker* on claims that are unlike Ms. Searle's—none of which have held that a post-*Tyler* just compensation claim can never be brought in federal court.

For example, Appellees' reliance on the Seventh Circuit's decision in *Garry* is particularly inapposite, because it addressed a fundamentally different type of constitutional claim—one that directly attacked the propriety of a state court's condemnation judgment itself. *See Garry v. Geils*, 82 F.3d 1362, 1369 (7th Cir. 1996). The *Garry* plaintiffs alleged that their property was improperly selected for condemnation as political retaliation, a claim that could succeed only by proving that the state court itself erred in finding the condemnation "properly exercised." By contrast, Ms. Searle's just compensation claim under *Tyler* accepts the validity of

the foreclosure judgment, while asserting an independent constitutional right to the surplus equity that remains after satisfaction of her tax debt. This critical distinction aligns with the Supreme Court's recognition in *Tyler* that a property owner's right to surplus equity exists separate from, and cannot be extinguished by, state law or procedure. *See Tyler*, 598 U.S. at 645 (property rights "cannot be so easily manipulated" by states seeking to "sidestep the Takings Clause"). Where *Garry* involved a collateral attack on the state court's core legal determinations, Ms. Searle seeks to vindicate a discrete constitutional right that was neither adjudicated by, nor dependent on, the foreclosure judgment.

For similar reasons, the District Court's reliance on *Bianchi v. Rylaarsdam,* 334 F.3d 895 (9th Cir. 2003)*,* was misplaced, in light of more recent precedent. *See Belinda K. v. Cnty. of Alameda*, No. 10-CV-05797-LHK, 2011 WL 2690356, *22 (N.D. Cal. July 8, 2011) ("[B]oth the Ninth Circuit and the Supreme Court have clarified the *Rooker–Feldman* doctrine since *Bianchi*."). While *Bianchi* involved a plaintiff seeking to vacate a state court recusal order, Ms. Searle's just compensation claim challenges independent conduct (failing to justly compensate Ms. Searle) that occurred *after* the state court judgment. *Id.* at *22 ("Because Plaintiff complains of legal injuries caused by the Defendants' actions, rather than by the Superior Court's judgment, her claims are not barred by the *Rooker–Feldman* doctrine.").

14

Just weeks ago, another District Court squarely addressed this issue, also rejecting an invocation of the *Rooker-Feldman* doctrine. *See Sharritt v. Henry*, No. 23 C 15838, 2024 WL 4524501, *6 (N.D. Ill. Oct. 18, 2024). In that case, like here, the plaintiffs brought a post-*Tyler* claim for just compensation. And the defendants in turn asserted as a defense that the plaintiffs "sought to undo the tax deeds the tax buyers obtained." *Id.* at *6. The court squarely rejected the argument, because insisting that just compensation be paid is not the same as undoing tax deeds: "[Plaintiffs] only ask for monetary compensation that they claim the counties owed them when they lost their properties. Although their injuries clearly derive from the state court orders to grant the tax buyers deeds to Plaintiffs' former properties, the requested relief does not call upon this Court to review the state court decision to issue the tax deeds." *Id.* (internal quotation marks omitted); *Rose v. Oakland Cnty., Mich. Treasurer*, No. 21-2626, 2023 WL 2823972, *9 (6th Cir. 2023) ("For the takings claim, the source of Rose's injury is the County's failure to compensate Rose for her equity interest, not the foreclosure itself.").

And separately, the Second Circuit Court of Appeals recently affirmed in one case cited by Ms. Searle in her opening brief—*Traylor v. Town of Waterford*, 24-691, 2024 WL 4615599 (2d Cir. Oct. 30, 2024). There, the court rejected the Takings Claim *on the merits*, as opposed to invoking the *Rooker-Feldman* doctrine for the proposition that the plaintiff's claim could not be heard in federal court for lack of

jurisdiction. *Id.* at *1 ("[S]pecifically, we agree that Traylor does not have a takings claim.") (internal quotation marks omitted).[3]

Additionally, as noted above, Appellees fail to grapple with the glaring problem at the heart of their position: if *Rooker-Feldman* truly bars federal courts from hearing post-foreclosure constitutional challenges related to surplus equity, how did the *Tyler* case itself get to the Supreme Court? Like Ms. Searle, Geraldine Tyler lost her property through tax foreclosure proceedings in state court before commencing her federal action. *See Tyler v. Hennepin Cnty.*, 505 F.Supp.3d 879, 885 (D. Minn. 2020) ("Pursuant to this statutorily-prescribed process, the County obtained a judgment against Tyler's condo in April 2012 after she received notice of the foreclosure action and failed to file an answer.") (emphasis added). Yet neither the parties nor any court along the way—including nine Supreme Court Justices— even hinted at a *Rooker-Feldman* issue.

In a similar vein, Maricopa's contention that *Tyler* claims can be brought only in state court collides headlong with the Supreme Court's holding in *Knick v.*

---

[3] The District Court case was styled as *Traylor v. Pacciuco*, LLC, No. 3:23-cv-00329 (JAM), 2024 WL 839523 (D. Conn. Feb. 28, 2024). *See id.* at *5 ("But Traylor's claims against the town under the Takings Clause, Excessive Fines Clause, and the Connecticut Constitution were not raised and decided in state court prior to the initiation of this case. Indeed, these claims appear to be modeled on the United States Supreme Court's recent decision in *Tyler v. Hennepin County*, 598 U.S. 631 (2023), which was decided in May 2023 after Traylor filed this lawsuit. Accordingly, the *Rooker-Feldman* doctrine does not bar those claims against the town.") (emphasis added).

*Township of Scott*. There, the Court held unequivocally that "a property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it"—and critically, that such a claim may be brought under "42 U.S.C. § 1983 at that time" in federal court. 588 U.S. 180, 185 (2019). Relegating all *Tyler*-based claims to state court, as Maricopa urges, would undermine the very remedy that *Knick* ensured—access to federal courts. *Id.* at 202 ("Takings claims against local governments should be handled the same as other claims under the Bill of Rights."). Federal courts cannot be so easily divested of jurisdiction over an entire category of constitutional claims. *See Pakdel v. City and Cnty. of San Francisco, CA*, 594 U.S. 474, 479 (2021) ("[Section] 1983 … guarantees a federal forum for claims of unconstitutional treatment at the hands of state officials.") (emphasis added and quotation marks omitted).

The manifest injustice of the Appellees' position is further highlighted by imagining its logical end-point. If their theory held, Arizona could revert to its pre-*Tyler* foreclosure regime tomorrow, and still generally close the federal courthouse doors to claims like Ms. Searle's. The *Rooker-Feldman* doctrine cannot countenance such a severe restriction on access to federal courts for constitutional claims.

### b. Ms. Searle's Claim That the Private Appellees Have Been Unjustly Enriched Is Not Barred by the *Rooker-Feldman* Doctrine.

The Private Appellees err by giving short shrift to Ms. Searle's claim for unjust enrichment. *See* PAAB, at 27-29. They argue that "Searle's grievance is with the State who took her Property, not to whom the State subsequently conveyed it." *Id.* at 28. Ms. Searle appreciates the concession that she at least has a grievance directly against Maricopa—without more, that would be enough to reverse the District Court here on at least Takings and Excessive Fines grounds.

But the Private Appellees should not themselves be able to reap the windfall of the value of Ms. Searle's home. They contend in their Answering Brief that they acted only pursuant to Arizona statutes, and that the judgment alone divested Ms. Searle of her property rights. *See* PAAB, at 27. But as Ms. Searle pointed out before the District Court, Arizona law required the Private Appellees to act subsequent to the state court judgment, however minor, in order to secure Ms. Searle's home: they had to pay a fee. 2-ER-043. ("At least one additional thing had to occur. Under A.R.S. § 42-18205(A), the treasurer's deed issues only after the lienholder pays a $50 fee. (referring to "a fee of fifty dollars per parcel"). This hurdle—however minor it may seem—is etched in state law…."). Neither the District Court nor the Private Appellees have ever addressed this argument.

The Private Appellees also attempt to distinguish *Knick* and *Dorce* in this context, but not in a way that matters for *Rooker-Feldman*. The key question here is whether Ms. Searle is engaged in a de facto appeal of the state court judgment; here, she is obviously not. The state court has not been unjustly enriched, did not make any legal findings—much less erroneous ones—about unjust enrichment, and the unjust enrichment is solely a product of the Private Appellees' violation of Ms. Searle's right to her surplus equity, by keeping and retaining her home (which came to fruition only when they paid the $50 fee mentioned above). As noted in the Opening Brief, that is a right that necessarily survived the state court judgment, because *Tyler* provides that a property owner's right to surplus equity survives even complete and total dispossession itself.

### c. Ms. Searle's Claim That She Has Suffered an Excessive Fine at the Hands of Appellees Is Not Barred by the *Rooker-Feldman* Doctrine.

Maricopa has no section of its brief addressing Ms. Searle's claims that she has been excessively fined by the Appellees. And the Private Appellees spend only a paragraph responding to Ms. Searle's arguments. *See* PAAB, at 41. They contend simply that they are not the government (although Maricopa is, of course), and that none of Ms. Searle's authorities involve a tax lien foreclosure. But they cite no authority whatsoever for the proposition that a state court judgment can launder the imposition of an excessive fine, so as to preclude a plaintiff from seeking relief from state actors and their accomplices in federal court.

To be clear, Ms. Searle has never alleged that any state court imposed an excessive fine on her. Her allegations are directed at the Appellees: Maricopa for transferring the deed to her home, and the Private Appellees for foreclosing and to this very day retaining the value of the excessive fine that was imposed on Ms. Searle. It is to the Appellees that Ms. Searle has paid an excessive fine; she has not given the state court any payments. *Accord Timbs v. Indiana*, 586 U.S. 146, 151 (2019) (The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense."); *Strizheus v. City of Sioux Falls, S.D.*, 664 F.Supp.3d 937, 957 (D.S.D. 2023) (rejecting *Rooker-Feldman* defense against Excessive Fines claim because an excessive fine action accrues when the government extracts the relevant payment).

Justice Gorsuch's concurrence in *Tyler* makes clear that such confiscation of surplus equity—specifically in the context of a former property owner who has lost all interests in their property due to a foreclosure action—raises grave concerns under the Excessive Fines Clause. *Tyler*, 598 U.S. at 650 (Gorsuch, J., concurring); *see also Dorce v. City of New York*, 608 F.Supp.3d 118, 143 (S.D.N.Y. 2022) ("[T]he plaintiffs have plausibly alleged that the retention of their surplus equity is a fine, because its purpose is at least partly punitive."). In short, the foreclosure judgment did not purport to authorize any fines, let alone excessive ones, so Ms. Searle's claim on this score is likewise independent of the issues resolved in the state court.

### V. Ms. Searle's Claim for a Private-Use Taking is Not Barred By the *Rooker-Feldman* doctrine, (1) Because it is an Independent Claim for Relief; and/or (2) if the Court Accepts the "Reasonable Opportunity" Doctrine.

Yes, many of the cases above distinguish efforts between obtaining surplus equity and trying to obtain the relevant property itself. So Ms. Searle understands if this Court draws the same line here. However, in these unique circumstances, Ms. Searle maintains that her claim for a Private-Use Taking is not barred by the *Rooker-Feldman* doctrine.

Most notably, Ms. Searle alleges that Maricopa gave away her house to the Private Appellees, as part of an Arizona statutory scheme permitting such a transfer through a County Treasurer's deed. These are the actions of the parties in this case, not the state court. At most, the state court "ratified" the actions of the parties in transferring possession of the home to the Private Appellees, at their request. Separately, the state court foreclosure judgment also occurred before *Tyler*, when relevant authority held that a deprivation of property in the context of a tax lien was not a cognizable Taking at all.

Appellees make much of the fact that Ms. Searle sought a preliminary injunction before the District Court, based on the idea that the foreclosure was in reality a "private use" taking. Even filing that motion before the District Court, they say, indicates that Ms. Searle's true aim is to achieve the return of her property, and thus abrogate the state court foreclosure judgment. But that argument fails.

First, and most importantly, that argument does not interact with the claims for Just Compensation, Imposition of an Excessive Fine, or Unjust Enrichment above—none of these forms of relief would secure the return of Ms. Searle's home. Thus, even if Appellees were correct that Ms. Searle's motion for a preliminary injunction below supports their assertion of the *Rooker-Feldman* doctrine, that is not a reason to affirm the District Court's dismissal of all claims.

And second, that argument fails because Ms. Searle's private-use Takings Claim, properly framed, is not covered by the *Rooker-Feldman* doctrine at all.

### a. Ms. Searle's Private-Use Takings Claim is Not an Attack on the State Court Judgment, and is Thus Not a De Facto Appeal.

The state court correctly applied Arizona law, as it existed at the time of its judgment. Ms. Searle has never contended otherwise. And the *Rooker-Feldman* doctrine "applies only … where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Dennis*, 546 U.S. 459, 466 (2006); *cf. Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1030 (9th Cir. 2005) ("MHC's complaint <u>does not directly challenge a state court's factual or legal conclusion</u>. MHC's complaint to the district court is, therefore, not a forbidden appeal under *Rooker–Feldman*."); *Kougasian*, 359 F.3d at 1140 ("[A] plaintiff must seek not only to set aside a state court judgment; he or she must also allege <u>a legal error</u> by the state court as the basis for that relief") (emphasis added).

In response to the general rule, the Private Appellees try to muddy the waters by asserting that the state court's judgment is "inextricably intertwined" with the ownership of Ms. Searle's home. But that argument asks the wrong question—in the Ninth Circuit, an inquiry into whether a claim is inextricably intertwined with a state court judgment occurs only <u>if</u> the federal action is a de facto appeal. *See Bell v. City of Boise*, 709 F.3d at 897 ("The 'inextricably intertwined' language from *Feldman* is not a test to determine whether a claim is a de facto appeal, but is rather a second and distinct step in the *Rooker–Feldman* analysis. Should the action not contain a forbidden de facto appeal, the *Rooker–Feldman* inquiry ends."). Here, Ms. Searle is not engaged in a de facto appeal of the state court judgment, because the state court got nothing wrong. *Id.* at 897 ("Without a direct challenge to a state court's factual or legal conclusion, Plaintiffs' suit is not a forbidden de facto appeal, and *Rooker–Feldman* is inapplicable.").

In that vein, Ms. Searle's injury is not the state court judgment itself, but the transfer of her home to a private party—which was done by Maricopa at the behest of the Private Appellees, not the state court. In that context, *Rooker-Feldman* has nothing to say. *See Hoblock v. Albany Cnty. Bd. Of Elections*, 422 F.3d 77, 88 (2d Cir. 2005) (for *Rooker-Feldman* to apply, the state court must have "not simply ratified, acquiesced in, or left unpunished" the actions of the parties); *accord Henrichs v. Valley View Development*, 474 F.3d 609, 614 (2007) ("*Rooker–Feldman*

[does not] appl[y] when a federal plaintiff complains of an injury that was not caused by the state court, but which the state court has previously failed to rectify.").

In other words, Ms. Searle's claim that her property was taken for an unconstitutional private purpose is not barred by *Rooker-Feldman* because she is not a "state-court loser" asking the federal courts to review and reject the foreclosure judgment. Rather, she asserts an independent constitutional challenge to Appellees' actions in transferring her property to private parties. Granting relief on this claim would thus not require determining that the state court's foreclosure decision "was wrong," but only that Appellees' conduct in disposing of the property violated the Public Use Clause of the Fifth Amendment, as incorporated by the Fourteenth Amendment.

### b. The *Rooker-Feldman* doctrine is designed to protect federal courts from becoming appellate courts over state law cases; not stop plaintiffs from raising arguments that were not available to them previously.

Secondarily, the Private Appellees seem to argue that Ms. Searle had a duty to raise fruitless, losing Section 1983 claims in the state foreclosure action, or waive them forever. That would be a strange inference from the *Rooker* and *Feldman* cases themselves, which the Supreme Court has noted stem merely from the proposition that federal district courts do not sit as appellate courts over state tribunals.

As even the Arizona County Treasurers Association—of which Appellee Allen is a member—recognized, Arizona's foreclosure procedural mechanisms were

well-settled at the time of the foreclosure action. *See* BRIEF OF AMICI CURIAE NATIONAL TAX LIEN ASSOCIATION, THE ARIZONA COUNTY TREASURERS ASSOCIATION, AND THE TAX COLLECTORS & TREASURERS ASSOCIATION OF NEW JERSEY IN SUPPORT OF RESPONDENTS IN *TYLER V. HENNEPIN CNTY.*, NO. 22-166 (Mar. 31, 2023) ("For a large county—Maricopa County, Arizona, or Essex County, New Jersey, for example—[a broad ruling by the Supreme Court] could cause the tax sale to grind to a halt.").[4]

Indeed, the default judgment against Ms. Searle was entered before *Tyler*, at a time when Arizona law expressly permitted the retention of surplus equity from tax lien sales. *See Automatic Art, LLC v. Maricopa County*, 2010 WL 11515708 (D. Ariz. Mar. 17, 2010). And Ms. Searle lost her property mere months before *Tyler* upended that framework, and recognized a property owner's right to surplus equity under the Takings Clause. *Tyler*, 598 U.S. at 639. It would be a perverse result to hold Ms. Searle responsible for predicting that a sea change in Takings law would occur in the future, such that the consequence of that failure is the loss of her home.

Lest we forget, *Rooker-Feldman*'s primary purpose is to channel state court appeals to the proper forum—the U.S. Supreme Court—not to forever bar federal claims that could not have been raised in the prior state litigation. *Cf. Allison v. State*

---

[4]https://www.supremecourt.gov/DocketPDF/22/22-166/262489/20230331142057501_Amicus%20Brief.pdf

*Farm Mut. Auto. Ins. Co.*, 266 Fed. Appx. 627, 628 (9th Cir. 2008) ("The Allisons cite to cases from outside this circuit that hold, in substance, that *Rooker–Feldman* does not apply where the plaintiff asserting claims in the federal district court did not have a reasonable opportunity to raise the relevant issues in the state court proceedings. We have recognized similar limitations on *Rooker–Feldman*."); *Marshall v. Washington State Bar Ass'n*, No. CV–11–5319 SC, 2012 WL 1884680, *9 (W.D. Wash. May 23, 2012) ("The pertinent inquiry is whether Marshall had a reasonable opportunity to raise objections in the state court proceedings."). Here, Ms. Searle had no realistic opportunity to litigate her private-use Takings claim in the foreclosure proceeding, given settled Arizona law at the time. The *Rooker-Feldman* doctrine should not be stretched to deny a federal forum in these circumstances.

## VI.  At a Minimum, Ms. Searle's Request for Declaratory Relief May Still Proceed.

To their credit, no Appellee contends that Ms. Searle's request for declaratory relief regarding the unconstitutionality of Arizona law is barred by the *Rooker-Feldman* doctrine. *Accord Cogan v. Trabucco*, 114 F.4th 1054, 1064 (9th Cir. 2024) ("*Feldman*, however, also placed an important limitation on the doctrine by drawing a distinction between challenging a particular as-applied state court decision and bringing a broader challenge to an underlying state statute governing such a decision."). Instead, the Appellees contend that (1) Ms. Searle alleges a free-floating

26

right to declaratory relief, not tied to a cause of action for which she is entitled to relief; and (2) the request is moot, in light of the change in Arizona law. Both arguments are raised for the first time on appeal, and both are incorrect.[5]

> **a.    Ms. Searle is at least entitled to a declaration that Arizona law effected a Taking and Imposed an Excessive Fine.**

As noted in the Opening Brief, Ms. Searle may pursue declaratory relief, because a mere finding that Appellees violated the Constitution does not contradict the state court foreclosure judgment. Op. Br. at 39. The Private Appellees try to distinguish the relevant cases as involving different fact-patterns, PAAB at 48, but that hardly matters. The underlying proposition is sound. *See Skinner v. Switzer*, 562 U.S. 521, 532 (2011) ("If a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court.") (cleaned up).

Of course, Ms. Searle has already succeeded at getting the Attorney General of Arizona on the record, with respect to this issue. *See* 2-ER-246 ("[U]nder *Tyler*, A.R.S. § 42-18204(B) is unconstitutional to the extent it purports to extinguish a dispossessed owner's property interest in the sale proceeds or value of the equity

---

[5] The parties dispute whether Appellee Allen properly moved to dismiss the Complaint below. But that dispute is largely irrelevant to this appeal, because Ms. Searle agrees with Maricopa that this Court should determine whether the *Rooker-Feldman* doctrine bars suit against Appellee Allen, so as to avoid the need to unnecessarily remand that specific issue to the District Court. On that score, Appellee Allen is a proper defendant under *Ex Parte Young*.

that exceed what the State is owed and could retain by statute."). But this admission does not afford Ms. Searle complete relief, as Appellees themselves argue that no one else is bound by the Attorney General's statements. *See* PAAB, at 29 ("[T]he Attorney General opinions are advisory and not binding on the courts.").

Appellees separately contend that declaratory relief, without more, would afford Ms. Searle nothing, because her damages are in the past. But no Appellee responded to Ms. Searle's Opening Brief on this score, which explains exactly why declaratory relief is still beneficial to Ms. Searle: "Such an outcome could lead to an award of nominal damages, an injunction, or bolster her case for a motion to reconsider her state foreclosure action if she prevails in this matter." Op. Br. at 41; *see also Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("A court may grant declaratory relief even though it chooses not to issue an injunction or mandamus. … A declaratory judgment can then be used as a predicate to further relief, including an injunction.").

Appellees' authorities on declaratory relief are readily distinguishable. Unlike *Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984), which involved purely retrospective relief related to an unlawful search, Ms. Searle seeks to address an ongoing constitutional violation, given that the previous Arizona law continues to deprive Ms. Searle of her property interests. Appellees argument based on *Seattle Audubon Soc. v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) is inapplicable as well,

because contrary to Appellants' argument, Ms. Searle seeks to correct an ongoing constitutional violation, rather than a purely past wrong.

And Ms. Searle's request is not "free-floating"; it is tied to her concrete constitutional injuries for (1) a Taking and (2) an excessive fine. *See., e.g.*, 2-ER-132 ("These statutes facilitate and necessitate the appropriation of Plaintiff's private property without just compensation, thereby violating Plaintiff's rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution."); 2-ER-136 ("These tax lien seizures effectively operate as grossly excessive fines and are thus prohibited under the Eighth Amendment."). There is little doubt that federal courts may enter declaratory relief to address bona fide constitutional violations that actively injure a plaintiff.

### b. Ms. Searle's Request for Declaratory Relief Is Not Moot, and In Any Event, the Voluntary Cessation Doctrine Applies.

#### i. Ms. Searle's claims for declaratory relief are not moot because the Court could issue an Order with real-world effect.

Appellees raise an issue of mootness for the first time on appeal. But Ms. Searle's claims aren't moot, because this Court could issue an order with real-world effect. Indeed, even the argument that Ms. Searle is not eligible for declaratory relief is not truly a mootness argument. *See Chafin*, 568 U.S. at 174 (An "argument— which goes to … the legal availability of a certain kind of relief—confuses mootness with the merits."). As noted above, Ms. Searle would benefit from declaratory relief

in myriad ways—she could obtain nominal damages in this action, use such relief in state court, and potentially seek an injunction elsewhere. *See Equal Emp't Opportunity Comm'n v. CollegeAmerica Denver, Inc.*, 869 F.3d 1171, 1173 (10th Cir. 2017) (rejecting a claim of mootness where the Court's decision would potentially affect a separate state law claim raised in state court).

Here, Appellees have not satisfied their heavy burden to establish that declaratory relief could never possibly affect Ms. Searle. *Cf. Cogan*, 114 F.4th at 1064 ("To establish mootness, Trabucco must show that it is *impossible* for a court to grant *any* effectual relief whatever to the plaintiff. That burden is a "heavy" one, and Trabucco has not carried it.") (original emphasis). This Court should hold Appellees to that onerous burden, particularly where the issue is raised for the first time on appeal.

> **ii.** **Ms. Searle's claims for declaratory relief are viable regardless of the mootness doctrine, because the voluntary cessation doctrine applies.**

There are two prongs to the voluntary cessation doctrine, if a defendant alleges that its own misconduct which caused the original injury has ceased: (1) first, there must be no reasonable expectation that the alleged violation will recur, and (2) second, interim relief or events must have completely and irrevocably eradicated the effects of the alleged violation. To be clear, while Arizona state law has changed, Ms. Searle maintains that Maricopa is bound by the same principles under the

voluntary cessation doctrine. *See* MAAB, at 4 (arguing that Maricopa was just following Arizona law).

Indeed, it is the government's burden to establish that a case is not subject to the voluntary mootness doctrine. *See* 13A Charles A. Wright et al., Federal Practice and Procedure § 3533.1 n.22 (3d ed. 2023) ("If a plaintiff begins with standing, a defendant who asserts that voluntary cessation has mooted the action carries a heavy burden to prove mootness, a clear difference from the rule that a plaintiff has the burden to establish standing."). But Appellees have never contended that Ms. Searle has been made whole, or that the effects of the previous Arizona law have been eradicated. Indeed, how could they? The Private Appellees are trying to keep Ms. Searle's home.

Thus, even if this Court determined that Ms. Searle's claim were moot, it would still fail the second part of the voluntary cessation doctrine. *See Finstuen v. Crutcher*, 496 F.3d 1139, 1151 (10th Cir. 2007) (rejecting the government's assertion of mootness where a same-sex couple still lacked a birth certificate for their child, such that the second prong was not met); *WWC Holding Co., Inc. v. Sopkin*, 488 F.3d 1262, 1269 n.4 (10th Cir. 2007) (rejecting mootness argument despite a change in policy on a going-forward basis, because the agency expressly declined to make its policy change retroactive); *Western Nuclear, Inc. v. Huffman*, 825 F.2d 1430, 1434 (10th Cir. 1987) (rejecting mootness argument where a new agency

rulemaking process did not address an injury allegedly caused by prior rulemaking). In short, Ms. Searle's claims cannot be dismissed unless the Appellees first undo their unconstitutional actions.

## VII. Appellees' efforts to point fingers at each other are unpersuasive.

*Tyler* establishes that a homeowner suffers a Taking when he or she is forced to pay more than their tax debt through the foreclosure and sale of their home. *Tyler*, 598 U.S. at 647 ("The taxpayer must render unto Caesar what is Caesar's, <u>but no more</u>.") (emphasis added). The fact that the government creates a shell-game to delegate the ability to foreclose and sell a home to a private third-party is a distinction without a difference.

Yet here, Maricopa alleges that that they are not a proper defendant, because they merely followed Arizona state law in permitting the Private Appellees to take ownership of Ms. Searle's. *See* MAB, at 4, 6-7. And the Private Appellees argue that they cannot be held liable for a Taking, because they are not a state actor. *See* PAAB, at 23 ("The decision to convey property to private actors like the Arapaho Defendant free from prior interests is similarly a decision made only by the State."); *see also* PAAB, at 39.

As an initial matter, these arguments are outside the scope of the *Rooker-Feldman* doctrine. The parties are welcome to point fingers at each other on remand, however futile. *See, e.g.*, PAAB, at 13 ("If the property owner fails to pay their taxes

after a private party begins a foreclosure action, Arizona <u>forcibly transfers the interest</u> of the delinquent owner to the private party free and clear of any adverse interest including the interest of the owner.") (emphasis added); *Sharitt v. Henry*, 2024 WL 4524501, *11 ("Nothing in the Fifth Amendment requires property 'taken for public use' to remain in the government's hands…").

When there are two defendants in this situation, the joint liability paradigm established in *Summers v. Tice*, 33 Cal.2d 80 (1948), provides a framework for analyzing the Appellees' attempts to evade accountability. *Summers* posits that when multiple defendants engage in tortious conduct that contributes to an indivisible harm, but uncertainty exists as to which defendant's actions directly caused the injury, the burden shifts to each defendant to prove they were not the but-for cause of the harm. *Id*. at 86.

Maricopa and the Private Appellees each minimize their role in the case here, but that is simply a non-starter. The County initiated the tax lien sale and issued the Treasurer's deed that divested Ms. Searle of title, while the Private Appellees purchased the lien and ultimately retained the excess sale proceeds in violation of *Tyler*. *See Sharritt*, 2024 WL 4524501, at *11 ("Plaintiffs ultimately render the entire value of their properties unto Caesar, who in turn renders it unto Antony. This still constitutes a taking…"."). But for the concerted actions of both the County and

the Private Appellees, Ms. Searle would suffer the complete deprivation of her equity.

## Conclusion

Ms. Searle was unconstitutionally deprived of her property interest pursuant to Arizona law. That conclusion was so inescapable that even the Attorney General of Arizona confessed the unconstitutionality of state law. The only question now is whether Ms. Searle, as *Knick* guarantees, may bring her constitutional claims in a federal forum. This Court should reverse, and let Ms. Searle's claims have their day.

Date: December 5, 2024

*/s/ William E. Trachman*
William E. Trachman
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
wtrachman@mslegal.org

Veronica Lucero
Davillier Law Group LLC
4105 N. 20th St., Ste. 110
Phoenix, AZ 85016
Tele: (602) 730-2985 ext. 705
Fax: (602) 801-2539
vlucero@davillierlawgroup.com

*Attorneys for Appellant Christine M. Searle*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

*Instructions for this form:*

*http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** <u>24-4819</u>

The undersigned attorney or self-represented party states the following:

☒ I am unaware of any related cases currently pending in this court.

☐ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

☐ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature:** <u>*/s/ William E. Trachman*</u>          **Date:** <u>December 5, 2024</u>

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*

*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** <u>24-4819</u>

I am the attorney or self-represented party.

**This brief contains 8,398 words**, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief (select only one):

☐ it is a joint brief submitted by separately represented parties;

☒ a party or parties are filing a single brief in response to multiple briefs;

or

☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated _____.

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Signature: <u>*/s/ William E. Trachman*</u>          <u>Date: December 5, 2024</u>

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:*

*http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** 24-4819

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

### Service on Case Participants Who Are Registered for Electronic Filing:

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Description of Document(s)** (required for all documents):

Appellant's Reply Brief

Signature: */s/ William E. Trachman*        Date: December 5, 2024